Nov. Term, 1861.

TENBROOK
v.
BROWN.

*M. Jenkinson*, for the appellant.

---

## TENBROOK *v.* BROWN.

A demurrer in the following form, viz., "Comes now said plaintiff and demurs to the second paragraph of the defendant's answer, and says that the same is not sufficient in law to enable the defendant to sustain his said defense, or to bar the plaintiff's complaint," is bad, as no statutory cause of demurrer is assigned.

Suit by a distributee of a testator, against the son and executor of the testator, to obtain distribution of certain personal property claimed by the son by gift from the father, in his lifetime. The plaintiff asked the Court to instruct the jury, that if the property was in the possession of the son as agent for his father, before the time the gift is claimed to have been made, and no apparent change of ownership took place, there was no valid gift; which the Court modified, by striking out the words, "there is no valid gift," and inserting the words, "it is evidence tending to prove that there was no valid gift."

*Held*, that the instruction, as asked, was properly refused, and that as given, it was as favorable to the plaintiff as he could legally ask.

The delivery of a chattel is necessary to pass the title by gift, but the delivery must be according to the nature of the thing given; and if the property is at the time of the gift in the possession of the donee, as agent for the donor, it is not necessary that the donee should surrender to the donor his actual possession, in order that the latter may re-deliver the

same to him in execution of the gift; but if the donor relinquishes all dominion over the thing given, and recognizes the possession of the donee as being in his own right, and the latter accepts the gift, and retains possession in virtue thereof, the gift is complete.

There is no presumption of unfair dealing from the fact that the parties occupy to each other the relation of father and son, but the burden of proving fraud, undue influence, or unfair dealing, rests upon him who alleges it.

A party has the right, if properly asserted, of having all modifications and explanations of instructions reduced to writing.

*Nov. Term, 1861.*

TENBROOK
v.
BROWN.

APPEAL from the *Parke* Common Pleas.

WORDEN, J.—Suit by *Tenbrook* against *Brown*. Judgment for the plaintiff, who appeals in consequence of the smallness of the verdict and judgment.

*Wednesday, December 11.*

*Tenbrook* was one of the heirs and distributees, through his mother, of *Samuel Brown*, deceased, and the defendant, *Brown*, was a son of the deceased, and his executor. The complaint sought distribution to the plaintiff of his share of the estate. The controversy in the case grew, mainly, out of the fact that the defendant claimed the most of the personal property, supposed to have been left by the deceased, as having been given to him by the deceased in his lifetime.

We will notice the points relied upon in the brief of counsel for a reversal.

The first is, that the Court erred in overruling a demurrer to a paragraph of the defendant's answer.

The demurrer in question assigned for cause none of the six specified causes of demurrer provided for by statute. It is a common law general demurrer, in the following form:

"Comes now said plaintiff and demurs to the second paragraph of the defendant's answer, and says that the same is not sufficient in law to enable the defendant to sustain his said defense, or to bar the plaintiff's complaint."

In *Lane* v. *The State*, 7 Ind. 426, the Court held substantially such a demurrer to be bad, and that it should have been overruled, as not in compliance with the statute. Following that decision, we hold that no error was committed in overruling the demurrer, without examining the sufficiency of the pleading to which it was filed.

Nov. Term,
1861.

TENBROOK
v.
BROWN.

At the proper time, the plaintiff asked the following instructions to the jury, viz.,

"4. That if the jury believe from the evidence that the property claimed as a gift by the defendant, was in the possession of the defendant as agent or manager for defendant's father, before the time the gift is claimed to have been made, and no apparent change of ownership or control had taken place after that time, there is no valid gift." This charge was refused as asked, but given, striking out the words, "there is no valid gift," and adding, "it is evidence tending to prove that there had been no gift."

"5. That if the jury believe from the evidence that the relation of parent and child existed between the donee and *Samuel Brown*, Sr., it is the duty of the jury to weigh well, and scrutinize closely, any facts in evidence tending to show any undue influence, or improper exercise of authority, over the donor; and if the defendant has taken a gift under such circumstances from his father, the proof lies upon the defendant to show that he has dealt fairly with his father, as with a stranger, taking no advantage of his influence or knowledge."

This charge was given as asked, with a slight alteration of phraseology, not affecting the substance, in this: instead of saying, "if the defendant has taken a gift under *such circumstances*," it was made to read, "if the defendant has taken a gift under *undue influence*, or *improper exercise* of *authority*," &c. The Court also added to the charge the following words: "but unfair dealing by the son is not to be presumed because the relation of father and son exists. The burden of proof of undue influence, or unfair dealing, is on the plaintiff."

We are of opinion that the fourth charge, as asked, was properly refused; and that as given, it was as favorable to the plaintiff as he could legally claim.

There can be no doubt that delivery is necessary to pass the title to a chattel by gift. Chancellor *Kent* says on this subject, "Delivery in this, as in every other case, must be according to the nature of the thing. It must be an actual delivery, so far as the subject is capable of delivery. It must

be *secundam subjectum materiam*, and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery, there must be some act equivalent to it. The donor must part, not only with the possession, but with the dominion of the property." 2 Kent's Com., 3d Ed., p. 438.

Now, it seems clear enough that if the property in question was in the possession of the defendant, as agent or manager for his father, at the time of the gift, still, his father might execute to him a valid gift of the property while thus in his possession. The law clearly would not require, in such case, that the defendant should first surrender his actual possession to his father, in order that his father might re-deliver the property to him in execution of the gift. It would seem that in such case the gift would be complete, if the father bestowed the property upon the defendant and relinquished all dominion and control over it, and recognized the defendant's possession thereof as being in his own right; and if the defendant, on his part, accepted the gift, and retained possession of the property in virtue thereof, with his father's consent. Actual delivery could not be made, without first going through the useless formality of surrendering up possession, because possession was already in the defendant. Such acts as above indicated would seem to be equivalent to a delivery, and to be sufficient to vest the property in the donee.

It seems to us that all this might have been done, and yet that there might not have been, in the language of the charge asked, any "*apparent* change of ownership or control," after the gift. The charge implies that there must have been such a change of ownership or control as would be "apparent" to the world. The defendant, as is assumed in the charge, having the possession of the property at the time of the gift, we think the gift might be valid, although there was no such apparent change of the ownership or control thereof. There might have been a real change of ownership, and of the capacity in which the defendant controlled the property, which appearances would not necessarily indicate. This is a question between an heir of the donor and the donee. If the rights of creditors of the donor

Nov. Term,
**1861.**

TENBROOK
v.
BROWN.

were involved, the question might admit of a different solution.

The fifth charge was given, in substance, as asked. The change of phraseology was well enough, for while it did not alter the meaning, it made that meaning more clear, and more easily understood by the jury. The additional matter appended to the charge may be regarded as an independent charge given by the Court. The matter thus appended we regard as clearly right in point of law. We know of no principle or authority authorizing the presumption of unfair dealing, between father and son, to be drawn simply from the fact of that relationship. On the contrary, it is a general principle, that the burden of proving fraud, undue influence, or unfair dealing, rests upon him who alleges it.

The next point is, that the Court erred in admitting improper evidence to go to the jury. The evidence consisted of the defendant's tax list of property. The evidence was offered, and though objected to by the plaintiff, was admitted.

The appellee makes the point that no exception was taken to the ruling in this respect. We have examined the record carefully, and find no such exception. In a general bill of exceptions filed in the cause we find the following statement: "Defendant then offered in evidence a sworn tax list of the property given in to the assessor of *Reserve* township, in ——————— by *Perry Brown*. Plaintiff objects. Objection overruled. (Which tax list was never filed nor placed among the papers of the cause.)" This is all that appears in the bill of exceptions. Appended to the transcript is an agreement of counsel setting out a description of the tax list, and stating that it was offered in evidence for the purpose of showing that all the property on the place belonged to the defendant. That "it was objected to by the plaintiff, for the reason that it was manufacturing evidence for the defendant, and the objection was overruled, and that it is the same list referred to in the exceptions."

This means, we suppose, that the list was the same as that referred to in the bill of exceptions, for it is no where else referred to at all. It will be observed that neither the bill of exceptions nor the agreement states that any

exception was taken to the ruling of the Court in admitting the evidence. No exception having been taken, there is no question properly before us, as to the admissibility of the evidence.

The next point assumes that the Court made verbal modifications and explanations of the charges given. A party has the right, if properly asserted, to have all modifications and explanations of charges reduced to writing, and if this should be refused, an exception might be taken to such refusal. *McClay* v. *The State*, 1 Ind. 385. In this case, however, it does not appear from the record that any such verbal explanations or modifications were made.

The only remaining point is, that the plaintiff was entitled to interest upon the amount due him, whatever that might be. There is no instruction in the record on the subject of interest, nor do we find that any was asked and refused. If there is any question before us as to interest, it arises on the evidence, upon which we see no good reason for disturbing the verdict and judgment.

*Per Curiam.*—The judgment is affirmed, with costs.

*R. Maxwell, S. C. Wilson, L. Wallace* and *J. P. Usher,* for the appellant.

*J. M. Allen, J. G. Crain, J. E. McDonald* and *A. L. Roache,* for the appellee.