## REBECCA SHERMAN ET AL. V. ALEXANDER HOUGLAND ET AL.

1. *Averments in Action to Set Aside Fraudulent Conveyance.*—Where enough is averred to show that ordinary legal remedies will not afford adequate relief, it is sufficient to sustain the action.

2. *Filing Interrogatories.*—The code does not mean to restrict the right to file interrogatories to the time of filing any specific pleading. These may be filed at any time before the issues are closed, or the right to file pleadings has terminated.

3. *Harmless Errors*—Such errors do not reverse a cause.

4. *Declarations as to Fraudulent Conveyance.*—Where parties are acting in concert in an attempt to defraud the creditors of one of them, the declarations of one made before the common purpose was accomplished would be admissible against all.

5. *Sworn Tax List as Evidence*—In such action a tax list sworn to by the grantee is admissible to show want of consideration or inability to pay.

6. *Circumstances as Badges of Fraud.*—Circumstantial proof is the usual proof of fraud; and an instruction so stating is not erroneous. Herein certain circumstances are detailed, as evincing fraud. And a confidential relation may be such a circumstance.

7. *Conveyance while Actions are Pending.*—Such pendency of actions does not necessarily imply fraud, but may be considered as a circumstance.

8. *Badges of Fraud.*—These afford grounds of inference as to fraud in a transaction.

9. *Abstract Instructions.*—Such should never be given, even if correct as matter of law,

10. *Notice to Grantee of Fraudulent Intent.*—If a valuable consideration has been paid, a conveyance cannot be adjudged fraudulent unless the grantee had notice of the fraudulent intent of the grantor; otherwise if no consideration is paid.

11. *Husband and Wife—Fraud.*—The wife of a debtor cannot get title to land already owned by her husband, by buying an outstanding claim which is without substantial foundation, and thus prevent it from being applied in payment of her husband's debts.

Filed April 5, 1881.

Appeal from Carroll.

Opinion of the court by Mr. Justice Elliott.

The appellees sought to have a conveyance of real estate, made to the appellant, Rebecca Sherman, set aside as fraudulent and obtained a decree setting it aside.

Appellants unsuccessfully demurred to the amended complaint of appellees, and here present the question of the correctness of the ruling upon their demurrer. It is contended that the complaint is insufficient because it does not allege the value of the real estate charged to have been conveyed. Allegations of value are very seldom material, and we do not think they are so in the present instance. We do not feel authorized to reverse the case upon the ground that the complaint does not state the value of the property, for the omission is one which cannot possibly do the plaintiffs any injury, and which does not affect the substantial merits of the controversy.

It is urged that the complaint is insufficient because it does not aver that the appellants had no property subject to execution at the time the action was instituted, and we are referred to the case of *Bruker* v. *Kelsey*, decided at this term. We believe the doctrine of that case to be right, and that the plaintiff in a suit to set aside a fraudulent conveyance of lands must show that the defendants had no property subject to execution at the time of the commencement of the action, but the appellants cannot receive any aid from that doctrine, because the complaint in this case does show that the grantor in the alleged fraudulent conveyance had no property subject to execution at the time the action was commenced.

The allegations of the complaint under mention are more full and direct than were those in the complaint in *Bruker* v. *Kelsey et al.* It is not only shown that an execution was issued and return of *nulla bona* made, but it is also alleged that the grantor did not have property subject to execution either at the time the conveyance was made or the action brought out of which the appellee's claim could be made. Enough is averred to show that an ordinary legal remedy would not afford adequate relief, and that appellees have a right to subject the land alleged to have been fraudulently conveyed to seizure and sale upon execution.

Appellants complain of the action of the court in compelling

the appellant, Mervin Sherman, to answer interrogations propounded to him by the appellees. The argument upon this point is that the interrogatories were not filed with a pleading affecting said appellant, that they were, therefore, improperly filed, and the appellant ought not to have been compelled to answer them. The code does not mean to restrict the right to file interrogatories to the time of filing any specific pleading, but means that they may be filed at any time before the issues are closed, or the right to file pleadings has terminated.

It is insisted that the court erred in compelling Mervin Sherman to answer interrogatories, because he was not a competent witness, as his wife is a party to the action. The assumption upon which this argument is based is unwarranted, but if it were a just one no harm was done, because the interrogatories were not offered in evidence. Judgments are never reversed because of harmless errors.

The ruling denying the appellants a new trial brings before us questions upon rulings admitting evidence, giving and refusing instructions, and the sufficiency of the evidence to support the verdict.

The court, over the objection of appellants, permitted witnesses to testify to declarations made by Mervin Sherman. These declarations were admissible against the party by whom they were made, and upon that ground, if upon no other, were entitled to admission. If appellants were acting in concert in an attempt to defraud the creditors of one of them, then the declarations of one, made before the common purpose was accomplished, would be admissible against all. There was enough evidence tending to prove a collusive attempt and design to defraud the creditors of Mervin Sherman to justify the admission of his declaration against all of the appellants.

There was no error in permitting the appellees to give in evidence the sworn statements of Rebecca Sherman, made to the assessor, wherein she gave a detailed statement of the property owned by her and subject to taxation. The statements were competent for the purpose of showing the ability of Mrs. Sherman to purchase and pay for the real estate conveyed to her. If from these sworn statements it appeared that she had no means

with which to buy property, the jury msght have inferred that the conveyance to her was a purely voluntary one, and therefore fraudulent as to creditors.

The third instruction given by the court is as follows: "Fraud is never presumed, but must be clearly proven. A conveyance of property made and received for the purpose of hindering, delaying and defrauding creditors, is void as against creditors. The burden of proving such fraud rests upon the creditor attacking it. But the proof is seldom direct proof, but usually consists of a chain of circumstances that indicate and accompany fraud. They are, first: The parties sustain confidential relations to each other. Second, concealment of the fact of the transfer of title. Third, the vendor being at the time of the transfer heavily indebted and pressed for the payment, by suit or otherwise. Fourth, the existence of a recent prior contract whereby the grantor is made to appear under obligation to make the transfer. Fifth, the want of other property or means of the debtor sufficient to pay his debts." This instruction is awkwardly framed, and is somewhat obscure, but is not erroneous. Appellant's counsel insists that it is erroneous because it tells the jury that one of the indications of fraud is that of the existence of a confidential relationship between the grantor and grantee, and in support of this position cite Tenbrook v. Brown, 17 Ind., 410. That case is not in point. The court does not tell the jury that the relationship affords a presumption of fraud, but simply that it is one link in the chain of circumstances tending to establish fraud. It is also urged that the instruction is erroneous because it places among the indications of fraud, the fact that there was a pending action at the time the conveyance was made, and counsel cite McMahan v. Morrison, 16 Ind., 172; Lowery v. Howard, 35 Ind., 170. The rule that the pendency of an action will not defeat a conveyance if made in good faith is declared by these cases and we give it our full approval. But that rule is a very different one from that upon which counsel here insist. A conveyance will not be declared fraudulent although made when many actions are pending if made in good faith, nor will the fact that actions are pending be of itself sufficient to overthrow the conveyance, but the

fact that an action is pending is always proper for the consideration of the jury, and it is not error to direct their attention to it as one of the circumstances usually attending a conveyance made to defraud creditors. The instruction does not declare that the fact that an action is pending will justify an inference of fraud, but simply that it is one of the circumstances usually accompanying and indicating a fraudulent conveyance of property.

The sixth instruction given by the court is as follows: " I have indicated to you some of the badges of fraud. A badge of fraud is a fact calculated to throw suspicion upon a transaction, and calling for an explanation. Its only effect in general is to require proof of the circumstances connected with the transfer, and of the good faith of the parties thereto. It is not conclusive of fraud, but simply an inference drawn by experience from the customary conduct of men, and hence is open to any reasonable and fair explanation." This instruction is substantially correct. The court does not tell the jury that a badge of fraud conclusively condemns a transaction as fraudulent as counsel suppose, but simply that it is one of the indications of fraud. This is the true rule. Badges of fraud afford grounds of inference from which the jury are authorized to conclude that a transaction surrounded by them is fraudulent. The party against whom they are adduced is at liberty to explain them if he can, but if sufficient in number and importance, and not explained, they will supply substantial grounds of pronouncing a transaction void upon the ground of fraud. The instruction asserts nothing in conflict with the rule declared in the case of *Jagers* v. *Kelly*, 52 N. Y., 274. In that case it was held, "It is not enough to create a suspicion of wrong. To invalidate a sale, tangible facts must be proved from which a legitimate inference of a fraudulent intent can be drawn." This is doubtless good law, and nothing said in the instruction is hostile to it, for it simply calls the attention of the jury to facts which they may properly consider as *indicia* of fraud, but it does not attempt to declare that they are sufficient to establish fraud.

The third and fourth instructions asked by the appellants and refused by the court, assert that a conveyance is not to be

deemed fraudulent solely upon the ground that it was made without consideration. These instructions assert an abstract proposition which would be correct if applied to a proper state of facts. But in this case they were rightly refused if for no other reason than that they were not relevant to the case made by the evidence. There was no error in refusing them, because the court in its instructions fully and explicitly instructed the jury upon the points covered by these instructions, and in quite as favorable terms as appellants had any right to ask.

The seventh instruction asked by appellants asserts, without qualification, that the plaintiffs could not recover unless they proved that the grantee had notice of the grantor's fraud. It was rightly refused. It is true that where the grantor receives a valuable consideration from the grantee the conveyance can not be adjudged fraudulent unless it be shown that the grantee had notice of the fraudulent, intent of the grantor; and if this instruction had asserted this proposition it would have been correct; but it goes much farther, and declares that in no case is a conveyance fraudulent unless the grantee participated in, or had notice of the grantors fraudulent purpose. The instruction as asked was entirely too broad, and under the evidence would have misled the jury had it been given. If it had qualified the general proposition asserted, by adding the words limiting the rule to cases where some consideration had been paid, then its refusal would have given appellants just ground of complaint. The cases cited by appellants do not apply to cases where the conveyance is without consideration, but apply only to cases where some consideration moves from the grantee.

The eighth instruction asked by appellants is as follows: " If you find from the evidence that the lands mentioned in the complaint were in the possession of the defendant, Mervin Sherman, and held by him, and that after his marriage with the defendant, Rebecca, another person, to-wit: one Jenkins claimed to hold a paramount title to the lands, it makes no difference whether the title of the said Jenkins was paramount or not if the defendants, Mervin and Rebecca, agreed to buy the title so held by said Jenkins; and should you find that said title was purchased from said Jenkins and the consideration therefor paid

for out of the money or separate estate of the defendant, Rebecca Sherman, with the understanding that the title so conveyed by said Jenkins was to be conveyed to her, and the defendant, Mervin, had the same conveyed to himself, he would hold the lands simply as a trustee for the said Rebecca, and they would not be subject to the payment of his debts." This instruction was rightly refused. It conveys the meaning that whether the purchase from Jenkins was in good or bad faith it would give the appellant, Rebecca Sherman, a title as against the creditors of the husband. This is not the law. If the purchase from Jenkins was merely colorable and designed to put title in the name of Rebecca Sherman it would not be valid as against her husband's creditors. The natural inference from the statement of the instruction that "it makes no difference whether the title of Jenkins was paramount or not" is that no matter what kind of a title Rebecca Sherman bargained for, it would supersede that of her husband, and place the title to the land in her beyond the reach of the husband's creditors. The wife of a debtor can not get title to land already owned by her husband by buying an outstanding claim which is without substantial foundation, and thus prevent it from being applied in payment of her husband's debts. If Mervin Sherman had previously owned the property his wife could not by buying, even in the utmost good faith, an outstanding claim which was not valid, secure a title which would be superior to that of her husband, or paramount to the rights of creditors. But the instruction does not even restrict the rule to cases where the purchase of the outstanding title is made in good faith, but extends it to all purchases of foundationless outstanding claims whether made in good or bad faith.

Two juries have found against appellants, and this of itself supplies to us an almost conclusive presumption that the verdict is sustained by the evidence. Notwithstanding this, we have examined the evidence with care and think it fairly supports the conclusion reached by the jury. That the juries have examined and considered fully the evidence given upon all the material points is evidenced by the fact that they have made full

answers to interrogatories upon all the important elements of the case.

There remain for consideration two questions. The first arises upon the overruling of appellant's motion for judgment on the answers made by the jury to the interrogatories propounded to them. It is insisted that as the answers show that Mrs. Sherman had paid three hundred dollars for an outstanding title, the conveyance can not be deemed fraudulent. If this answer stood alone it would not create such an irreconcilable conflict with the general verdict as would warrant the overthrow of the latter. The answer, however, is but one of many, and taking all the answers together the appellees would have been entitled to judgment if the general verdict had been for the appellants.

The second of the questions last referred to arises upon the provision in the decree directing that the property should be sold without relief from appraisement laws. Section 456 of the code very decisively settles this question against the appellants.

Judgment affirmed.