[No. 7,743.  Department One.—May 20, 1884.]

# THE SAN JOAQUIN VALLEY BANK, RESPONDENT, v. B. W. BOURS, APPELLANT.

CORPORATION—BANK—CASHIER—LIABILITY FOR LOANS.—The cashier of a banking corporation, having authority to loan the money of the bank with or without security, is liable for losses arising from loans without security, not entered in the books of the bank, nor reported to the board of trustees, but treated in his reports to the board as cash on hand.

ID.—NEGLIGENCE OF TRUSTEES.—Negligence of the trustees in the discharge of their duties to the bank is no defense to the cashier.

ID.—SALARY OF CASHIER—IMPLIED AGREEMENT.—The cashier was first appointed for three months, his salary being fixed by a verbal agreement at $200 per month. At the expiration of that period, he was appointed for one year, and thereafter continued to act for several years under annual appointments. The salary was never fixed by any resolution of the board of trustees, and during a portion of the time after the first three months, he drew the same salary as originally agreed upon, but subsequenely drew $300 per month. The amounts so drawn were charged to him in the books of the bank, and reported to the board. *Held*, that these facts were sufficient to establish an implied agreement between him and the board, increasing the salary to $300 per month.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial.

The action was brought by the bank against the cashier to recover the amount of a loss alleged to have been sustained by reason of certain loans, and also a further amount alleged to have been overdrawn by the cashier on account of his salary. The remaining facts appear in the opinion.

*Terry, McKinne & Terry*, and *J. H. Budd*, for Appellant.

*W. L. Dudley*, and *J. B. Hall*, for Respondent.

Ross, J.—The plaintiff is a banking corporation, and the defendant, from the 30th day of March, 1868, to March 17, 1877, was its cashier. By the by-laws of the bank the president and cashier were each empowered "to discount bills, notes, or other evidences of debt, to buy and sell bills of exchange, to make loans with or without security . . . . and generally to transact and carry on the business of the bank, subject to the direction of the board of trustees expressed through the by-laws or such express resolution as may, from time to time, be passed, and they shall each report to the board of trustees, when required, each and everything by them, or either of them, transacted."

The evidence shows, and the findings of the court below are to the effect that the defendant was the active manager of the bank. Between the 1st day of Junuary, 1871, and the 1st day of October, 1874, he loaned, personally, and through the assistant cashier, to one De Blainville, divers sums of the plaintiff's money — in the aggregate $36,599, or thereabouts. Those loans were made without any security being taken therefor, and no entry or memorandum thereof was made in the books of the bank. Nor was any note or memorandum of any kind whatever made or kept by defendant of the transactions with De Blainville, save and except memoranda upon slips of paper, called in the record, "tags," and kept in the bank on a wire, which tags showed the amounts loaned to and paid by De Blainville and the balance due by him from time to time. On the 12th day of March, 1877, there remained, and ever since has remained unpaid, of the moneys so loaned to De Blainville by defendant, the sum of $9,247.49.

The by-laws required that the board of trustees should every month examine into the affairs of the bank, count its cash, and compare its assets and liabilities with the balances on the general ledger, for the purpose of ascertaining the condition of the bank, and whether the books were correctly kept. The duty thus imposed upon the board seems, from the record, to have been grossly neglected; for prior to the month of March, 1877, the cash does not appear ever to have been counted by it, and none but the most superficial examination made into the affairs of the bank. The board, however, met monthly, and to it at each meeting the defendant presented as his report a book of general balances, which, among other things, purported to represent the amount of cash on hand. These representations — so far at least as the item of cash was concerned — were untrue; for the amount of cash represented by the book of general balances was more than the amount of cash in the vaults of the bank by the amount represented by the "tags" already alluded to. The defendant thus represented to the board of directors that certain money of the bank was in the vaults, whereas in truth he had loaned it to a man, not only without security and without taking from him the slightest evidence of indebtedness, but, so far as appears, without interest, and from whom he never made the

slightest effort to collect it. And there is testimony going to show that when, in March, 1877, the board of directors concluded to count the cash, defendant, on being informed of that intention instructed the assistant cashier to put the "tags" away, immediately left the bank, and a few days afterward resigned his position. To hold that one intrusted with the care and management, for profit, of funds of another, can dispose of those funds as did the defendant, without liability to himself, would be, as we conceive, to do violence to the most obvious principles of law and justice. It is no justification of the defendant to say that the directors of the bank did not do their duty; that if they had counted the cash they would have found it short, and their attention would thus have been attracted to the "tags," and so to the fact of the loans to De Blainville. The defendant stood in a position of trust and confidence, and he was at least bound to act in good faith in respect to the property intrusted to him. If it be admitted that he was not bound to report the condition of the affairs of the bank to the board of directors, unless such report was by the board required, still he was bound in law and conscience to make such report as he did make speak the truth. Defendant was rightly held liable by the Court below for the amount of the De Blainville indebtedness. But upon another question in the case, the judgment and order must be reversed and the cause remanded for a new trial. The defendant was first appointed cashier by the board of trustees of the plaintiff on the 30th day of March, 1868, for the period of three months. On the first Wednesday of July, 1868, he was reappointed for the period of twelve months. After that there was an annual election or employment of him as cashier by the board of trustees, pursuant to the by-laws of the bank. Defendant's compensation as cashier was never fixed by any resolution of the board of trustees, but it appears that when first appointed there was a verbal understanding between himself and the trustees that he was to draw a salary of $200 per month; and this salary he did draw and charge himself with from the time of his entry upon the duties of his office to the 1st day of April, 1870. From the date last mentioned defendant drew the sum of $300 per month as his salary as cashier. This sum he caused to be charged against himself in the books of the bank, and he so

returned it in the book of general balances presented to the board of trustees at their monthly meetings. The board must therefore be held to have had knowledge of the fact that defendant was charging and drawing for his services as cashier the sum of $300 per month, and with this knowledge they continued to reappoint him cashier for seven successive years. Under such circumstances the board of trustees must be held to have agreed to the charge made by the defendant for his services as cashier.

Judgment and order reversed and cause remanded for a new trial.

McKee, J., and McKinstry, J., concurred.