## BLUE v. CAPITAL NATIONAL BANK.

[No. 17,673. Filed April 15, 1896. Rehearing denied June 19, 1896.]

PLEADING AND PRACTICE.—*Set-off and Counter-claim.—Demurrer.*— The informality of a demurrer, which was sustained below, cannot be first asserted on appeal for the purpose of upholding answers in set-off and counter-claim, which are, in fact, insufficient.

CORPORATION.—*Salary of Vice-President.*—A vice-president of a banking corporation is not entitled to any compensation for performing the ordinary duties of his office in the absence of a governing statute, by law, regulation, or contract, providing therefor.

SAME.—*Breach of Contract.—Amount of Recovery.*—The breach of a contract by a bank to loan a party money at a specified rate of interest, does not entitle him to the difference between the interest on the amount borrowed at a stipulated rate, and that which he actually paid, unless he was unable to obtain money at the former rate from any other source.

SAME.—*Assignment of Contract.*—The assignment of the interest of one of the parties in a preliminary contract between some of the incorporators of a bank, whereby they were to hold certain offices in the corporation at specified salaries, does not pass the claim of the assignor against the bank for the salary voted to him by the bank.

SAME.—*Counter-claim.— Slander Cannot be Made the Subject of, Against a Promissory Note.*—Slander, upon the credit of maker, cannot be made the subject of a counter-claim in an action upon a promissory note for borrowed money.

From the Sullivan Circuit Court. *Affirmed.*

*McCullough & Spaan, W. S. Maple,* and *J. T. Hays,* for appellant.

*J. S. Bays,* and *Chambers, Pickens & Moores,* for appellee.

HACKNEY, C. J.—The appellee sued the appellant on a promissory note for $10,000.00, executed by him to the latter and payable six months from the date thereof with interest at eight per centum per annum after maturity. To the appellant's amended two paragraphs of answer, one in the nature of a set-off and the other purporting to be in counter-claim, the lower court sustained the appellee's demurrer. Appellant declining to plead further judgment was rendered against him for $11,395.66. The errors assigned by the appellant bring in question the action of the lower court in so sustaining said demurrer.

The first question discussed by counsel is as to the form of the demurrer and its sufficiency to challenge the pleadings here in review. The first specification of the demurrer was that the "first paragraph of answer does not state facts sufficient to constitute a cause of defense," and the second specification was that the "second paragraph of answer and counter-claim does not state facts sufficient to constitute a cause of defense or counter-claim." Upon the theory that set-off and counter-claim are special affirmative

pleas, and are required to allege facts sufficient to constitute a cause of action against the complainant, counsel for appellant argue that the demurrer should have questioned the facts stated to have constituted a cause of action, and not a cause of defense. It can not be necessary to cite authority to support the proposition that the pleas in question were not defenses. The statute permits them to be pleaded as answers, R. S. 1894, section 350, but to be sufficient they must allege facts which would constitute a cause of action against the plaintiff. As said by Mr. Justice Worden, in *Campbell* v. *Routt, Admr.,* 42 Ind. 410, where the demurrer was on the ground that the pleading "did not state facts sufficient to bar the action, and did not 'state facts enough for a counter-claim,' * * * The first may be disregarded as inapplicable to the pleading, which was not in bar of the action. The second, that the pleading did not 'state facts enough for a counter-claim,' is one not known to the statute, and should perhaps be regarded as not raising any question as to the validity of the pleading. *Lane* v. *State,* 7 Ind. 426; *Tenbrook* v. *Brown,* 17 Ind. 410. The cause of demurrer should have been, that the pleading did not state facts sufficient to constitute a cause of action."

We do not stop to consider whether, in a case like the present, this rule should apply where the trial court, without question from the counter-claimant, has entertained the demurrer and has sustained it. It would seem that where the demurrer has been overruled, this court, in presuming in favor of the trial court's action, might reasonably conclude that such action had resulted from a decision upon the informality of the demurrer, and not upon the sufficiency of the pleading sought to be questioned. It would seem, also, that where the party whose pleading is thus attacked makes no question of the sufficiency

of the demurrer, but proceeds upon the hypothesis that it properly raises the question of the sufficiency of his pleading should not be permitted to raise the question for the first time upon appeal. To permit him to do so would often work a fraud upon the trial court and a hardship upon his adversary, while the rule we suggest would reach the merits of the question. This distinction and, possibly, new rule need not be invoked here since, if the pleas are affirmative and should be treated as required to plead causes of action and not of defense, their sufficiency may be raised for the first time in this court. *Campbell* v. *Routt, supra*. The sufficiency of pleas is raised by assignment of cross-error. If it shall be concluded that the pleas did not state a cause of action, the informality of the demurrer could not be asserted to uphold them.

In *Palmer* v. *Hayes*, 112 Ind. 289, it was said by Mitchell, J., speaking for the court: "It is urged that the demurrer to this answer was insufficient in form, and that it should have been overruled for that reason. If it should be conceded that the demurrer was informal, it would not follow that the ruling should be reversed on that account. The most that can be said is that a bad answer went out of the record upon an informal demurrer; or, in other words, that the court reached a correct conclusion in a manner not altogether formal." See also *Davis* v. *Green*, 57 Ind. 493; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496; *Hildebrand* v. *McCrum*, 101 Ind. 61.

The plea of set-off sought to predicate a cause of action as upon *quantum meruit*, for the services, for several years, of a vice-president of the appellee, the account for which, it was alleged generally, had been assigned to the appellant.

In Thompson Comm. on the Law of Corp., Vol. 4, section 4682, the rule with reference to the question

presented by this plea is stated thus: "The president of a corporation is always a member of its board of directors. In addition to his ordinary duties as a director, it is his function to preside at meetings of the board, and, together with the secretary, and by means of the corporate seal (where a seal is required), to authenticate the formal acts and contracts of the corporation. In respect of his right to compensation, he is subject ordinarily to the rule already stated with regard to *directors:* he is not entitled to any compensation for performing the ordinary duties of his office, unless the governing statute, or some by-law, regulation, resolution, or contract, to which his own vote was not essential, has given it to him. As the law does not imply an agreement to pay for such services, in order for him to recover compensation for them, he must at least show an antecedent, valid agreement to pay for them."

That the proposition stated in the text is correct we have no doubt, that it is well fortified by the decisions we know, and that the same rule applies to the office of vice-president, it is needless to suggest. See from the work just quoted, section 4380; *Loan Assn.* v. *Stonemetz*, 29 Pa. St. 534; *Cheeney* v. *Lafayette, etc., Co.*, 68 Ill. 570; *New York, etc., Co.* v. *Ketchum*, 27 Conn. 170; *Merrick* v. *Peru Coal Co.*, 61 Ill. 472; *Kilpatrick* v. *Penrose, Bridge Co.*, 49 Pa. St. 118; *Butts* v. *Wood*, 37 N. Y. 317; *Hall* v. *Railroad Co.*, 28 Vt. 401, 406; *Bliss* v. *Matteson*, 45 N. Y. 22; *Dunston* v. *Imperial, etc., Co.*, 3 B. & Ad. 125; *Holder* v. *Lafayette, etc., Co.*, 71 Ill. 106; *Maux Ferry, etc., Co.* v. *Branegan*, 40 Ind. 361.

The second paragraph of answer, by way of counterclaim, alleged that one Wilson, in 1889, was anxious to enlist capital in the organization of a national bank at Indianapolis, of which bank he should be a salaried official; that the appellant then desired a re-

liable source from which to borrow various large sums of money on reasonable time and with reasonable security; that appellant agreed with said Wilson to enlist in said enterprise a man of large capital and influence if, upon the organization of such bank, he, the appellant, should have the credit he so desired, from time to time for ten years, or as long as Wilson was a manager of the bank; that he did enlist the man, so promised, who, together with said Wilson and another, entered into a written contract, one of the considerations for which was the promise of said Wilson to the appellant as to said extension of credit, which said contract was to the effect that the said then parties thereto would severally procure certain subscriptions to the capital stock of the proposed bank; that one should become president, another vice-president and the third cashier of the proposed bank, at salaries stated, and that the parties thereto should "cast their votes as stockholders and directors, and use their influence to induce their friends to cast their votes in harmony with this agreement and for a board of directors that will faithfully carry it out." It was alleged that the appellee bank was organized pursuant to said arrangement, and the three persons mentioned were elected to the offices contemplated and "under the plan and arrangement aforesaid," and the "said contract as to salaries, as well as said agreement for the rights of" the appellant, were, by the appellee "fully ratified and confirmed," and the appellant's "rights * * under and pursuant to the contract" were recognized, and said Wilson has ever since been connected with the management of said bank. It was alleged also that in pursuance of said arrangement the appellee had several times loaned money to him in various sums.

The pleading then alleged in detail six supposed

breaches of the agreement between Wilson and the appellant, two of which are upon assignments, covering different periods, of the interest of said vice-president in the written contract above referred to and which are treated as carrying a claim for services performed by such vice-president in the sum of $11,000.00. In view of what we have already said with reference to the sufficiency of the first paragraph, or set-off, we are unable to observe how the appellant could predicate a valid claim for the salary of the vice-president upon the contract between Wilson and others, as aforesaid.  The assignments do not purport to carry any interest or demand beyond that arising upon said written contract.  It is not alleged that by any corporate action a salary was provided for the appellee's vice-president, and if it had been so provided, the assignment of the preliminary contract would not carry it over to the appellant, since that contract, though it in terms specified what salary should be voted to the vice-president, it did not create the salary, nor purport to do so.  Under this pleading it may be possible that by corporate action such salary was provided, but the assignments in question would not give the appellant an interest therein.

One of the breaches alleged was that as a part of said preliminary agreement, between the appellant and Wilson, the appellant was to obtain a loan from the prospective bank, at six per cent. interest, for the purpose of paying for his stock in said bank to be by him subscribed; that said agreement was ratified by the bank, and for a time was carried out, but that ultimately he was required to pay appellee eight per centum instead of six, to his loss in the sum of $1,000.00.  It is alleged that in pursuance of the same agreement as to loans to meet subscriptions to the capital stock of the bank, he and another purchased

stock from a third at the par value of $21,000.00, and that he obtained the money from the appellee, at six per cent. interest, to pay for his interest in the stock so purchased; that after a time, appellee required eight per centum instead of six, as agreed, and by reason of that fact appellant was obliged to sell $9,000.00 of his stock at the sacrifice of $2,500.00, and lost on account of such excess in interest $1,000.00.

The pleading does not disclose, and we are at a loss to determine how the difference in the rate of interest on the two loans just mentioned was collected, except by the agreement of the appellant, nor do we observe how that loss became necessary, unless he was unable to obtain the money at six per cent. elsewhere, a fact not pleaded; nor do we understand upon what theory the appellee could become chargeable with the sacrifice upon the stock sold. If the money market had been closed against him, or if to borrow money elsewhere he would have been obliged to pay over twenty-five per centum, the sacrifice on the stock sold, facts of which we are not advised by the pleading, the appellee's claim for eight per centum upon the loan would not have enforced the sale and the sacrifice, but if the money market was open to him the losses need not have occurred. It will be observed that the alleged breaches, thus far disclosed, connect themselves with the preliminary contract, that of the promoters of the banking organization, but that they have no relation whatever to the note sued upon. The frequent general allegations of "ratification by the plaintiff" have reference only to the contract of the promoters.

It is further alleged that the note in suit was given for money borrowed to buy bonds of the St. Louis, Indianapolis & Eastern Ry. Co., and was borrowed upon the faith of said preliminary agreement with Wilson, understood by the parties to said written contract and

ratified by the bank, and that said note was renewed seven months after its execution, for a period of six months. Facts are then alleged against the appellee constituting slander upon the credit of the appellant, and consisting of alleged false, malicious and willful statements that he was insolvent, also in sending said notes to the banks of the town of his residence and business for collection, with statements that he would be sued upon it, and caused the note to be exhibited to others to whom he sustained confidential business relations; that it caused the various mercantile agencies of the country to publish the fact that he had been sued upon said note; all for the purpose of preventing him from obtaining surety for another renewal of said note, to his injury in the sum of $10,000.00, and to the injury of his local business in the sum of $5,000.00.

This alleged breach is sought to be connected with both the preliminary agreement between Wilson and the appellant and the note in suit.

With reference to all of the alleged breaches, it may be said, as was said in *Standley* v. *Northwestern, etc., Co.*, 95 Ind. 254: "A counter-claim is that which might have arisen out of, or could have some connection with the original transaction, in view of the parties, and which, at the time the contract was made, they could have intended might, in some event, give one party a claim against the other for compliance or non-compliance with its provisions." The statutory definition is that "A counter-claim is any matter arising out of or connected with the cause of action," etc. R. S. 1894, section 353. Again it is referred to in the statute as "a counter-claim arising out of the contract, or transaction set forth in the complaint as the ground of the plaintiff's claims." R. S. 1894, section 354.

In *Miller, Admr.,* v. *Roberts*, 106 Ind. 63, this court

said: "Under these statutory definitions, it is very clear, as it seems to us, that any matter, which is pleaded as a counter-claim, must either arise out of, or be connected with, the contract or transaction set forth in the complaint as the ground of the plaintiff's claims."

In *Douthitt* v. *Smith, Admr.*, 69 Ind. 463, it was held that the matter set up in the counter-claim must relate to the matter in question in the complaint, and must not introduce a distinct matter, as it is but auxiliary to and dependent upon the original suit. There the plea of counter-claim sought to introduce matters belonging to a jurisdiction differing from that to which the plaintiff's cause belonged, and that fact was suggested as illustrating the conclusion that the two subjects were disconnected.

In the case at bar, all of the matters alleged in the counter-claim, excepting the tort, are wholly foreign to the subject-matter of the suit, and it would be the merest subterfuge to permit the preliminary contract with Wilson to furnish the connecting thread. As to those matters, it can only be said that because Wilson agreed that when the bank should be organized the appellant should have accommodations which were favorable; and that he had accommodations, bearing no relation to the note sued upon, and about which the bank did not treat him fairly. Those accommodations and the treatment connected with them have not even remote connection with the subject-matter of the present suit, and, when the note in suit was executed, could not have been intended in any event to give the appellant a claim. See also *Williams* v. *Boyd*, 75 Ind. 286; *McMahan* v. *Spinning* 51 Ind. 187; *Shelly* v. *Vanarsdoll*, 23 Ind. 543.

It is difficult, if not impossible, to observe how the clearly expressed terms of the contract in suit, the

note, can be so far impaired by the alleged previous parol agreement as to give rise to any item of the counter-claim pleaded. Whatever that agreement, and though it had some relation to the note in suit, it was certainly superseded by the definite and unambiguous promise and obligation of the appellant. Though that agreement had the effect to insure him a loan for the $10,000.00, he obtained the loan on terms by him agreed to in the note itself. The terms so agreed to, have been broken by him, and he seeks to meet that breach by setting up violations by the appellee on other occasions, and with reference to other and like transactions of said parol agreement. But, with reference to the parol agreement, as connected with the preliminary written contract, which must be relied upon to connect all of the transactions pleaded in the counter-claim, excepting, possibly, the tort, it may be suggested, though it is unnecessary to decide the question, that it was of doubtful validity. Its effect was to combine the votes and influence of the parties to it for the election of particular officers, upon particular salaries, which officers were pledged in advance to make the appellant a favored creditor of the bank without regard to the state of the money market, the obligations of the bank, or the interests of its stockholders. Such a contract does not commend itself to the demands of public policy. Its tendency, if not its direct result, is to foist upon the stockholders officers not desired; to take from the assets moneys for salaries not earned; to deny to the officers, in the business transactions of the bank, that freedom of judgment and impartiality of action necessary to successful results. Contracts having such tendencies have generally, if not universally, been held void. *Bliss* v. *Matteson, supra; West* v. *Camden,* 135 U. S. 507; *Fuller* v. *Dame,* 18 Pick. (Mass.), 472; *Bollman* v. *Loomis,*

41 Conn. 581; *Guernsey* v. *Cook*, 120 Mass. 501; *Woodruff* v. *Wentworth*, 133 Mass. 309; *Lum* v. *Clark* (Minn.), 57 N. W. Rep. 662; 1 Redf. Railways, section 140; Bishop Contracts, section 525; Thompson Corp., Vol. 4, section 4682; 9 Am. and Eng. Ency. of Law, 916; *Noel* v. *Drake*, 28 Kas. 265, 42 Am. Rep. 162.

In this view of the question it may well be doubted if "ratification" by the appellee was ever possible. It is little enough, however, that one pleading the ratification by a corporation, of such a contract, be required to plead such facts as may disclose a knowledge of the terms of the pre-existing contract, and an action upon that knowledge by others than the very officers whose contract it is.

The element of the counter-claim so alleging tortuous conduct on the part of the appellee, for the reasons already stated, receives no strength from the contract between the appellant and Wilson, or that between Wilson and others. The naked question remaining is this: Can slander be the subject of counter-claim in an action upon a promissory note for borrowed money? In our judgment it cannot. See *Conner* v. *Winton*, 7 Ind. 523; *Slayback* v. *Jones*, 9 Ind. 470; *Roback* v. *Powell*, 36 Ind. 515; *Harris* v. *Rivers*, 53 Ind. 216; *Zeigelmueller* v. *Seamer*, 63 Ind. 488; *Avery* v. *Dougherty*, 102 Ind. 443; *West* v. *Hayes*, 104 Ind. 251; *Richey* v. *Bly*, 115 Ind. 232.

In *Conner* v. *Winton*, *supra*, the action was for money deposited, and the counter-claim alleged that plaintiff had falsely charged the defendant with stealing the money so sued for. This court said: "The question is, what is the legal effect of the words 'arising out of or connected with?' Do they refer to those matters which have an immediate connection with the transaction, or do they include, also, those which have a re-

mote relation to it, by a chain of circumstances which were not had·in view in its inception? Suppose *Conner* had beaten *Winton* for uttering the slander, could. *Winton* have replied the damages occasioned by the battery to those resulting from the slander, and could the parties have settled all their quarrels in the action to recover the money? We do not think the statute contemplates any such practice. A counter-claim is that which might have arisen out of, or could have had some connection with the original transaction, in view of the parties, and which, at the time the contract was made; they could have intended might, in some event, give one party a claim against the other for compliance or non-compliance with its provisions." Here is found the definition of counter-claim already quoted from *Standley* v. *Northwestern, etc., Co., supra,* and it supplies the unanswerable conclusion that tort can not be a basis of counter-claim against contract. *Slayback* v. *Jones, supra,* illustrates the rule that tort can not be regarded as growing out of or connected with contract, within the meaning of the statute, simply because the contract had suggested it or was remotely an incident to it.

In our opinion, the answers were both bad, and that the trial court did not err in its ruling.

The judgment is affirmed.