Social Amusement Co. 
      vs.       } Eq.No.7184
  Joseph E. Heroux 
February 24, 1926

BAKER, J., Heard on bill answer and proof.

The complainant brings this bill against the respondent, asking that the latter be compelled to surrender and deliver certain shares of stock of the complainant corporation for cancellation and that the issuing of said stock may be declared to be illegal.

The chief facts involved in the case are not seriously in dispute.

Early in 1919 the complainant corporation was organized for the purpose of erecting and operating a theatre located in what is known as the Social District in the city of Woonsocket. The respondent was not one of the original incorporators, although he was vitally interested in the enterprise. He had been for some years president of the Chamber of Commerce of the Social District in said city and had advocated the erection of a theatre there, and he became one of the originators and promoters of the complainant corporation.

The records show that at a meeting of the Board of Directors Feb-

ruary 3, 1919, he was elected secretary and general manager of the corporation and authority was given to him to sell the shares of the corporation at a commission. He did sell a large number of shares. He soon became a stockholder to a considerable amount in the new company but he was not a member of the original board of directors. Land was acquired in the year 1919 and the erection of a theatre was begun and continued into the year 1920. Several times the respondent offered to resign as general manager by reason of some little friction with other officers or members of the board, but his resignation was not accepted and matters were amicably adjusted.

At a meeting held on January 13, 1920, it was voted by the Board of Directors that a bonus of $2000 be paid to each director and also to the secretary manager, the respondent. While in form this vote was for a cash bonus, in actual effect it was for the issuing of $2000 worth of shares in the corporation and the bonus so voted was issued in the form of shares.

This vote was passed immediately prior to the annual stockholders' meeting of the corporation held early in February 1920, but no action was taken at that meeting ratifying the action of the Board of Directors, and as far as would appear the general stockholders knew nothing of the issuing of said shares.

The records show that the respondent was paid a salary for performance of his duties as secretary but there is no vote authorizing the payment of any salary to him by reason of his being general manager. A receipted bill for the respondent's services as secretary is one of the exhibits in the case. The records of the Board of Directors then show that on April 6, 1920, a further payment of $2000 was to be given each director, payable in stock, which was issued. At this time the respondent was a member of the Board of Directors, having been elected at the annual stockholders' meeting early in February.

It appears that when the books of the corporation were audited in 1920, the question was raised as to the legality of these issues of bonus stock, and at a meeting of the Board of Directors held August 18, 1920, it was voted "that all the shares and bonus voted for the directors be annulled and the shares taken returned and cancelled." All the shares held by the directors and officers other than the respondent were returned to the corporation. The respondent returned for cancellation the shares issued to him under the vote of April 6, 1920, at which time he was a director, but declined to return the 100 shares of a par value of $20 each issued to him under the vote of January 13, 1920, and these are the shares involved in the present litigation.

In determining the question before the court, it becomes necessary to consider somewhat the law relating to the issuing of corporate shares. It would seem that if directors have the power in any given instance to pay compensation to officers by way of salary for services rendered, then such payment can be made by issuing stock of the company not previously issued in lieu of money, if the officers are willing to take their compensation in that form.

Thompson on Corporations 2d ed., Vol. 2, Sec. 1751.

It seems to be equally well settled, however, that it is a broad principle of the law that the assets of a corporation are a trust fund in the hands of the directors and officers which they can not apply or divert to themselves.

Ellis vs. Ward, 137 Ill. 509.

Further, it would seem that in the ordinary case where an officer of a

corporation is also a stockholder, in order for him to recover compensation from the corporation for the usual services rendered thereto in performing his duties as such officer, there must be an express agreement or understanding and if none is expressed, none will be implied.

Fletcher Cyc. Corp., Vol. 4, Sec. 2736.

Loe vs. Ring, 123 Wis. 370.

Metropolitan Rubber co. vs. Place, 147 Fed. 90.

Citizens' Nat'l Bank vs. Elliott, 55 Ia. 104.

Blue vs. Capital Nat'l Bank, 145 Ind. 518.

Woods' Sons Co. vs. Schaefer, 173 Mass. 443.

It would also seem to be well recognized that directors or managing officers of a corporation can not legally vote to themselves or other officers' compensation for past services where there is no agreement that such officers should be paid.

Fletcher Cyc. Corp., Vol. 4, Sec. 2762.

Thompson on Corporations, 2d ed., Vol. 2, Sec. 1765.

Apparently, however if an officer of a corporation performs services for the corporation which are extraorrinary and entirely outside the usual duties of that officer, then he can recover at law on a quantum meruit from the corporation for the reasonable value of such services.

Flynn vs. Columbus Club, 21 R. I. 534.

It will be presumed however, that services rendered for a corporation by an officer will be done by him in the course of his employment as such officer unless from the nature of the services, or from the evidence, it appears otherwise.

Olney, Receiver, vs. Chadsey, 7 R. I. 224.

In the case at bar the complainant contends that the shares which it is seeking to recover from the respondent were issued illegally and for past services for which no compensation, on the facts, could properly be presumed or implied, and further, that the respondent was actually a promoter of the enterprise in question and that also, on the evidence, he specifically agreed and promised to return the shares in question.

The respondent, on the other hand, denies the contentions of the complainant and argues that he is entitled to retain the shares in question as part compensation for services rendered the corporation, such services being unusual and extraordinary and outside of those called for from a general manager of such a corporation as the one in question.

An examination of the evidence in the case in connection with the respondent's position as manager leads the Court to the conclusion that he was not a mere employee of the complainant corporation and that his duties as manager were not just ministerial but that the testimony shows clearly that the respondent as manager was one of the regular directing officers of the corporation, having an interest therein far exceeding that of one merely hired to fill such a position.

While it is undoubtedly true that the respondent did a great deal of work to push forward the affairs of this corporation, and while it would appear that, as one who possibly had more time than some of the other officers, he attended to many matters of detail connected with the building of the theatre and the starting of the enterprise, nevertheless, after careful consideration, the Court does not feel that it can say that these services were unusual or extraordinary or such services as a general manager of a corporation, such as the complainant, might not be expected to perform in the regular course of his duties. The evidence shows that the other officers and directors of the company were faithful in their attend-

ance at meetings and in performing such duties as were delegated to them by the Board of Directors. The respondent does not testify that he expected to be paid for the services he was rendering as general manager. There is nothing in the testimony, in the opinion of the Court, which shows any intention of payment on the part of the complainant when the respondent was elected general manager, or any expectation of payment on his part for services he might have to perform in that capacity. Under such circumstances it would seem fair to presume that he was performing such services for the common good of those in the enterprise, he himself receiving the benefit as a substantial stockholder.

The Court finds, therefore, that the respondent has not shown satisfactorily that the services he rendered the complainant corporation during the year 1919 and the early part of the year 1920, as general manager, were unusual or in addition to the ordinary services performed by such officer so as to entitle him to claim special compensation.

In support of his contention, however, the respondent further claims that the language of the vote passed at the meeting of January 13, 1919, bears out his contention that he had performed unusual duties. The vote as recorded in p. 92 of the record book is as follows: "It is decided unanimously that a bonus of $2000 be paid to each director, also the secretary manager, for the great work which he has accomplished during the year 1919."

The complainant argues that an examination of the record book shows that the word "manager" and that the words "which he has" have been inserted since the records were originally written, thereby changing the meaning of the vote. It should be borne in mind that these records were kept by the respondent himself as secretary. The persons making the motion and seconding the motion at that meeting of the Board of Directors testified that the vote was not passed in the form as now recorded and that it was not the intention of the board to designate the respondent in any way for special commendation.

An examination of the book itself shows the words in question to be in different ink. They bear all the earmarks of having been written in after the original record was written. The Court, on the testimony presented, believes that to be the case and finds that it was not the intention of the board to single out the respondent. Further, he insists that the vote of August 18, 1920, annulling the issue of the shares does not apply to him as far as the matter of the first bonus is concerned. Possibly the vote can be so construed if a narrow reading is given to it. In direct language perhaps it does not apply to the respondent, because when the first bonus was voted he was not then a director, being elected a few weeks thereafter. However, it would appear to the Court that the meaning and intention of the vote should be considered and that it should be construed broadly and reasonably. The Court is satisfied from the testimony that at the time the vote was passed it was intended to apply to all the bonus stock issued. At the time the vote of August 18, 1920, was passed the respondent was a director, and those passing the vote doubtless considered that it applied to him. In any event, it does not seem to the Court that the respondent's position is particularly bettered by the form in which this vote was passed. His testimony that the record book was taken out of his possession through no fault of his own, and his explanation as to how numerous pages are missing, do not appeal particularly to the Court. As a matter of fact, it

believes that a fair reading of the evidence shows that in the first instance, after the vote of August 18, 1920, was passed, the respondent agreed to return all of his stock for cancellation, and that it was more or less of an afterthought on his part to retain possession of the stock issued under the vote of January 13, 1920.

After considering this whole matter carefully, the Court feels that the present case comes within the broad principles laid down in the case of Anderson vs. Johnson, 45 R. I. 17. The particular facts of that case are, of course, in many ways different from those in the case at bar. In the matter before the Court there is no promoter's agreement entered into prior to the organization of the corporation, but the Court finds that in the present case the stock issued the respondent was really and actually a gift for past services to one who had been an actual promoter of the complainant corporation. The testimony shows that the respondent received considerable sums in addition from the sale of stock and in other ways, in addition to his salary as secretary. In the judgment of the Court, therefore, the issue in question was illegal. The respondent is not entitled to retain the stock by way of salary or compensation for services, and the complainant is entitled to have the prayer of its bill granted.

For Complainant: James H. Rickard.

For Respondent: R. L. Daiguault.