[Civ. No. 1531. Fourth Appellate District.—November 21, 1935.]

JOHN J. COX, Respondent, v. FIRST NATIONAL BANK OF BREA (a National Banking Corporation), Appellant.

Joseph Lynn and Francis B. Cobb for Appellant.

Head, Wellington & Jacobs for Respondent.

MARKS, J. — Plaintiff brought this action to recover $1266.67 for unpaid salary, and for salary during vacation periods. The complaint contains three causes of action. The first seeks to recover $300 for salary for one year commencing

May 1, 1931, during which time he was paid $200 per month when it was alleged his salary had been fixed at $225 per month. The second is to recover $466.67 for salary from January 1 to October 10, 1933, during which time he was paid $150 per month when it was alleged his salary was $200 per month. The third is to recover $500, at the rate of $50 per week, for ten weeks' vacation with pay, following October 10, 1933. The trial court awarded him $300 under his first cause of action, $466.67 under the second and $325 under the third.

Defendant is a national banking association organized under the laws of the United States. At all material times, W. D. Howard was its president.

On September 24, 1927, Howard, and perhaps two individual directors, employed Cox as cashier at a salary of $225 per month. He became vice-president, cashier and a director of the bank. No minutes of any directors' or stockholders' meetings or other records of the bank were introduced in evidence. There is an intimation in the record that at a meeting in September, 1927, the board of directors fixed plaintiff's salary at $225 per month. At a meeting held in May, 1932, that body fixed his salary at $200 per month. Effective May 1, 1931, Howard reduced plaintiff's salary from $225 to $200 per month, and to $150 effective January 1, 1933. As far as the evidence discloses no action was taken by the board of directors as a board on plaintiff's salary other than at the meeting in May, 1932, and perhaps at the one in September, 1927. Plaintiff drew $225 per month to May 1, 1931; $200 per month to January 1, 1933, and $150 per month to October 10, 1933. At the time of the two reductions by Howard, plaintiff maintained to Howard that he had no authority to reduce the salary without action by the board of directors and complained to the individual directors of the salary reductions. He did not bring the matter up in the meetings of the board of which he was a member but drew and accepted the reduced salary without objections other than those we have mentioned.

We find in the federal laws the following pertinent provisions: "Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

. . . Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places. . . . Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; . . . '' (Sec. 24, p. 13, title 12, U. S. C. A.)

The vice-president, the cashier and a director are officers of a national banking association and their compensation must be fixed by the board of directors or by duly authorized officers. In the absence of a governing statute, by-law, regulation or contract to the approval of which his own vote as director was not essential, the vice-president of a national banking association is not entitled to any salary as such. (*Blue* v. *Capital National Bank,* 145 Ind. 518 [43 N. E. 655].) As there is nothing in the record showing that the bank or any of its officers agreed to pay Cox any compensation as vice-president we will limit our examination of the case to his compensation as cashier.

The term of the office of cashier is not annual. An incumbent duly elected and qualified holds office until he resigns, or is removed, or his successor appointed by the board of directors. (*Westervelt* v. *Mohrenstecher,* 76 Fed. 118 [34 L. R. A. 477].) A contract with the cashier of a national banking association appointing the cashier for a definite period at a fixed salary is void and does not prevent his removal at any time by the board of directors. It will not support an action for damages for discharge nor permit recovery of salary accruing after such discharge. (*Copeland* v. *Melrose National Bank of New York,* 229 App. Div. 311 [241 N. Y. Supp. 429]; *First National Bank of Colquitt* v. *Miller,* 23 Ga. App. 441 [98 S. E. 402]; *Van Slyke* v. *Andrews,* 146 Minn. 316 [178 N. W. 959, 12 A. L. R. 1068]; *Rankin* v. *Tygard,* 198 Fed. 795.)

If we assume from the indefinite and unsatisfactory evidence before us that prior to May, 1932, the board of directors did not fix plaintiff's salary, it is still clear that he acted as cashier of the bank and drew a regular monthly salary as such. He made regular reports to the board of directors of the condition of the bank and we assume from intimations in

the record that these contained statements of the amounts of the various salaries paid. It is clear that the directors knew plaintiff was acting as cashier and the amounts he drew for his services as such. If the foregoing assumption is made the most that can be said of this state of the record is that the board of directors each month ratified the salary paid plaintiff prior to the time the board fixed his salary in May, 1932. (*San Joaquin Valley Bank* v. *Bours,* 65 Cal. 247 [3 Pac. 864].)

■ Howard testified "The board of directors, I always talked about the salaries, and they always delegated to me, to handle the salary end of it." This testimony stands uncontradicted in the record. If it is true the board of directors delegated the power to fix salaries of the officers and employees of the bank to Howard then he had power to reduce plaintiff's salary as well as to fix it in the first instance, if he did so.

If it be true that the board of directors at a meeting held in September, 1927, fixed plaintiff's salary at $225, it is strange that the records of that meeting were not introduced in evidence. They would have furnished *prima facie* evidence that such action was taken. On the record before us we cannot conclude that plaintiff is entitled to recover the $300 salary from May 1, 1931, to May 1, 1932, or the $466.67 salary from January 1 to October 10, 1933.

It is somewhat difficult to determine upon what theory plaintiff expects to recover for the vacation periods. It is alleged in the complaint that "On or about the 10th day of October, 1933, while plaintiff was still employed as vice-president and cashier of the defendant herein, the board of directors of said defendant, granted to plaintiff a ten weeks' vacation which was the time accumulated by plaintiff for a vacation for the years 1929, 1930, 1931, 1932 and 1933. That at the time the board of directors of defendant granted to plaintiff the said vacation, he had a fixed salary of $200.00 per month. That the custom of the defendant herein, and the understanding between defendant and its employee has been that the employee of the defendant was entitled to two weeks' vacation each year on salary. That by reason of the time granted plaintiff herein to take his accumulated vacation, there became due to plaintiff for said time the sum of $500.00, no part of which has been paid." The finding of the trial

court in response to the foregoing allegation is as follows: "That on or about the 10th day of October, 1933, while plaintiff was still employed as vice-president and cashier of defendant herein, the board of directors of said defendant, granted to plaintiff an indefinite vacation, which was the time accumulated by plaintiff for a vacation for the years 1929, 1931 and 1932. That during the years 1929 and 1931, plaintiff's salary had been fixed by the board of directors of defendant at $225.00 per month. That during the year 1932, plaintiff's salary had been fixed by the board of directors of defendant at the sum of $200.00 per month. That the custom of the defendant herein, and the understanding between defendant and its employee, has been that the employee of the defendant was entitled to two weeks' vacation each year on salary. That by reason of the time granted plaintiff herein, to take his vacation there became due plaintiff for said time, the sum of $325.00, no part of which has been paid."

The plaintiff was never an *employee* of the bank. A vice-president is one of the *officers* of a national bank. (Sec. 24, title 12, U. S. C. A.) The cashier is also an important executive officer. (*Merchants' National Bank of Boston* v. *State National Bank of Boston,* 10 Wall. 604 [19 L. Ed. 1008]; *Warner* v. *Penoyer,* 91 Fed. 587 [44 L. R. A. 761]; *United States* v. *City Bank of Columbus,* 21 How. 356 [16 L. Ed. 130].)

If we assume that the allegations of the third cause of action attempt to plead a cause of action based on contract, and the quoted finding attempts to award damages for a purported breach of contract, we can discover no evidence either supporting the fact of a contract that plaintiff was to have two weeks' vacation each year with full pay, or that in October, 1933, he was granted a vacation with pay which pay was withheld from him.

According to the evidence there was nothing said to plaintiff at the time of his employment by defendant about his taking two weeks' vacation with pay. This was not a part of his contract of employment. Plaintiff testified that about thirty days after his employment by defendant he had a conversation with Howard about vacations in which Howard said to him, "John, you will get your vacation of fifteen days every year." Nothing was said about a vacation with pay. Nowhere in the record is there any evidence that the bank or any

of its authorized officers promised plaintiff an annual vacation with full pay.

To support the recovery of money for vacation periods plaintiff seems to rely upon what he insists was a custom of defendant to give each of its employees two weeks' vacation with pay each year. To prove this custom, Mrs. Dinns, who was first bookkeeper and later assistant cashier of defendant, testified that after discussing the matter with plaintiff she took her annual vacations on pay. This might establish a custom in so far as Mrs. Dinns was concerned but it could hardly establish a custom affecting other employees or officers of the bank. The evidence is clear that plaintiff only took one vacation on pay during the six years he was an officer of the bank. This would seem to rather effectually negative the supposition that there was any such custom as to him.

There is no evidence in the record to suggest that at the time plaintiff left the bank, about October 10, 1933, he was granted a vacation with pay. All the evidence is to the contrary. He asked for a four weeks' vacation with pay, which was not given him. On the contrary, he was given an "indefinite vacation" with nothing said about pay and it would seem that his successor was immediately employed. This would seem to indicate that his "indefinite vacation" was in effect a discharge. As his employment was at the pleasure of the board of directors and that body could discharge him at any time (*Westervelt* v. *Mohrenstecher, supra*) his salary terminated at the time of such discharge.

We have purposely refrained from discussing the question of lack of consideration for any promise of defendant to give plaintiff two weeks' vacation with pay each year because we can find no evidence of any such promise.

Plaintiff was paid a salary for each month he served the bank. If the third cause of action be considered one for breach of contract, and upon another trial he can establish a valid contract which was breached by defendant, his recovery should be limited to "all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom". (Sec. 3300, Civ. Code.)

We have not discussed the questions of estoppel, ratification and the statute of limitations because they were not raised by the pleadings and were not urged in the trial court or considered there.

 As the case must be tried again, and to avoid the recurrence of errors of the first trial, we deem it wise to call attention to the rule permitting the written minutes of meetings of the directors of a corporation to be contradicted, varied or enlarged upon by parol evidence. The minutes are *prima facie* but not conclusive evidence of what they show, and, in the absence of the element of estoppel, parol evidence may be introduced to show what actually took place at a directors' meeting. (6A Cal. Jur. 338 et seq., and cases cited.)

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.