8 N.J. Super. 234 (1950)
73 A.2d 846
WILLIAM A. FASOLO, RECEIVER OF TOOL-A-MATIC MACHINE CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
REGNU, INC., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1950.
Decided June 12, 1950.
*235 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Samuel Milberg argued the cause for appellant.
Mr. Isadore Glauberman argued the cause for respondent.
The opinion of the court was delivered by COLIE, J.A.D.
This appeal is from a judgment of the Chancery Division setting aside a chattel mortgage made by Tool-A-Matic Machine Company (hereinafter referred to as T M C) to Regnu, Inc.
Plaintiff, statutory receiver of T M C filed a complaint seeking to set aside the chattel mortgage upon the ground that T M C was insolvent within the meaning of R.S. 14:14-2 when the mortgage was given to Regnu and also because the affidavit of consideration did not state "the consideration of such mortgage and, as nearly as possible, the amount due and to become due thereon," as required by R.S. 46:28-5. The *236 particulars in which the affidavit is said to be false are set up in the complaint as follows: (a) that T M C paid, as consideration for the loan, $250 to one Unger and a like sum to one Orseck with the result that T M C received $13,000 instead of $13,500 as the affidavit sets forth; (b) that the statement that "the sum of $15,000 less commission of $1,500 was the actual sum received by the mortgagor from the mortgagee" is false because the said $1,500 and the two payments of $250 were a bonus; (c) that the affidavit does not disclose that Regnu "exacted from one Stephen D. Zampella, the president of Tool-A-Matic Machine Co., Inc., a confession of judgment in favor of the mortgagee."
The learned judge below found that "there was exacted from the mortgagor as a condition to the granting of the mortgage, a payment of $250 in addition to the $1,500 bonus set forth in the affidavit. * * * The result is that the mortgagor received only $13,250 instead of the $13,500 as stated in the mortgage."
Unger, a New York attorney, was the president of Regnu and Theodore Kagen was the secretary and treasurer. The latter testified that some weeks prior to the closing of the transaction Zampella, T M C president, was told that Unger would charge $250 legal fees if the transaction went through. At the closing a bill for legal services was presented and paid and the payment was entered on the books of T M C as legal fees. On the stand Zampella said that he never knew that it was a counsel fee but that is of little weight in the face of the entry in the books of T M C to the contrary and no denial of the testimony of Kagen that the subject was discussed at the preliminary conference which initiated the deal. It is in accordance with usual business practice for a lender to search the records for liens and judgments against a borrower, and that was done in this case. We are satisfied from the record that the payment to Unger was in fact payment for legal services as shown on the books of T M C. Nor can we attach any significance to the further fact that Unger endorsed the check over to Regnu. The evidence of Kagen stands uncontradicted *237 that this was a loan by Unger to Regnu. There is a total absence of evidence that the payment to Orseck of $250 which was entered on the books of T M C as legal services was a bonus, as respondent contends.
We do not think that the failure of the affidavit of consideration to set forth that Regnu, the mortgagee, obtained bonds and warrants for confession of judgment from Zampella and T M C and a personal guaranty from the former was fatal. Respondent relies on Bollschweiler v. Packer House Hotel Co., 83 N.J. Eq. 459 (Ch. 1914). That case is clearly distinguishable from the one under consideration. The court there said: "This contract between the parties was expressly referred to in the chattel mortgage itself as one of the conditions thereof, and on the theory that the mortgage was not valid until the execution and delivery of the contract, the contract clearly became part of the true consideration of the mortgage. The contract was not, however, set out in the mortgage itself, nor was it referred to in the affidavit as making up any part of the consideration of the mortgage. The mortgage treats the advance of money as the sole consideration of the mortgage. If this contract was such an essential part of the transaction that the validity of the mortgage depended on its delivery, then, * * * either the contract or its substance and effect should have been set out in the affidavit as to consideration." In the cited case the contract was referred to in the mortgage and went to the validity of the mortgage. In other words the contract and the mortgage were integrated. We think that the sound rule as to what should go into the affidavit of consideration of a chattel mortgage is well stated in Bateman Bros. v. Jones, 109 N.J. Eq. 8 (Ch. 1931): "the legislative purpose in the enactment of the statute was to compel the mortgagee to commit himself to a statement or disclosure of his debt or claim, under oath, * * * sufficiently precise and specific to afford the creditors of the mortgagor, in case fraud was suspected, a fair opportunity to ascertain, by judicial investigation or otherwise, whether the mortgage was an honest security or a mere fraudulent *238 cover." Neither the bonds and warrants for confession of judgment nor the guaranty changed the amount of the "debt or claim." They were instruments enlarging the remedies which the mortgagee might pursue in event of default, and no part of the consideration within the purview of R.S. 46:28-5.
Our determination that the affidavit complies with the statute makes unnecessary a discussion of the further grounds advanced by appellant.
The judgment is reversed.