38 N.J. Super. 58 (1955)
118 A.2d 114
AMEL STARK, TRUSTEE IN BANKRUPTCY OF FRANK H. SCHEIER, PLAINTIFF,
v.
THE FLEMINGTON NATIONAL BANK AND TRUST COMPANY, A CORPORATION ORGANIZED UNDER THE BANKING LAWS OF THE UNITED STATES, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 9, 1955.
*60 Mr. Franklin W. Kielb, Flemington, tried the cause for plaintiff.
Mr. C. Ryman Herr, Jr., Flemington, tried the cause for defendant (Messrs. Herr & Fisher, Flemington, attorneys).
SCHETTINO, J.S.C.
This is an action to set aside a chattel mortgage, for an accounting and for recovery of the value of assets listed in the chattel mortgage. By order of a referee in bankruptcy, dated February 2, 1955, plaintiff was authorized to proceed in the plenary suit in this court for the purpose of setting aside the chattel mortgage and recovering the fair value of the assets of a bankrupt, Frank A. Scheier.
On July 30, 1953 Scheier executed a chattel mortgage to defendant covering certain assets in a garage property located on Highway No. 202, R.F.D. Flemington, New Jersey, *61 known as the Hunterdon Auto Body, to secure the sum of $2,500, repayable $100 per month with interest at 5%, first payment to be made August 30, 1953.
Defendant gave $2,500 to Scheier. The affidavit of consideration, executed by defendant's cashier is as follows:
 "STATE OF NEW JERSEY :
 : ss
 COUNTY OF HUNTERDON :
 John C. Huff, Cashier of the
 Flemington National Bank
 & Trust Co., "STATE OF NEW JERSEY :
 : ss
 COUNTY OF HUNTERDON :
 John C. Huff, Cashier of the
 Flemington National Bank
the mortgagee in the foregoing mortgage named, being duly sworn, on his oath says that the true consideration of the said mortgage is as follows, viz: the sum of Twenty-five Hundred ($2500.00) Dollars as evidenced by a promissory note, for which this mortgage is given as collateral security, in the amount of $2500.00, the consideration for the said note representing cash advanced by the Flemington National Bank & Trust Company to the said Frank Scheier.
Deponent further says that there is due and to become due on said mortgage the sum of Two Thousand five Hundred dollars besides lawful interest thereon from the 30 day of July, 1953.
 JOHN C. HUFF 
 John C. Huff
 Subscribed and sworn to before
 me this 30th day of July, 1953.
 JOHN E. CARBERRY 
 Attorney at Law of N.J. "
At the same time Scheier executed another chattel mortgage in the sum of $2,640 on the same chattels to a Walter E. Hoffman. This mortgage contained the following statement: "It is further understood that this chattel mortgage is second in lien to a chattel mortgage heretofore given to the Flemington National Bank and Trust Company of Flemington, New Jersey." The two mortgages were recorded on July 30, 1953, at 3:25 o'clock P.M. Scheier made the August 30 and September 30 payments on time. Other payments, although not paid on time, were made and a total of $800 on account of principal was paid, the last payment on April 9, 1954.
On or about August 1, 1953 Scheier made a list of the assets purchased and valued them at $3,969.70. Thereafter *62 he submitted financial statements dated August 31, September 30 and November 30, 1953 showing assets of $7,755.08, $8,201.52 and $9,457.03, respectively. On June 3, 1954, because of default in payments on the mortgage, defendant gave public notice of the chattel mortgage sale for June 21, 1954 at 2:00 P.M. by publishing the notice in the Hunterdon County Democrat, a weekly newspaper published at Flemington. The notice listed the assets still in the defendant-mortgagor's possession. The constable in charge of the sale posted notices of sale for 10:00 A.M. instead of for 2:00 P.M. for June 21. The notices also contained a mistake in the amount due by reason of other indebtedness which Scheier owed to the bank. At 10:00 A.M. on the scheduled day of the sale, no one bid except defendant. Others had appeared, examined the chattels and left without awaiting the sale. The constable then postponed the sale until 2:00 P.M. No one appeared at that time and the goods were bought in by defendant. Thereafter, defendant sold the chattels to Louis Aruta partly for cash and partly on credit for $1,500.
On July 20, 1954 Scheier filed a petition in bankruptcy in the United States District Court, District of New Jersey.
The issues in substance are as follows:
(a) Did the cashier of the defendant, a national bank, have authority to execute the affidavit of consideration required under the former R.S. 46:28-5 without reciting therein specific authority to execute such affidavit? (The present section concerning the affidavit is N.J.S.A. 46:28-4, L. 1953, c. 214, p. 1619, sec. 1, approved July 6, 1953, effective 30 days thereafter.)
(b) Was the affidavit of consideration fraudulent?
(c) Was the chattel mortgage sale proper, or (2) were the articles unfairly sold, (3) was the price grossly unfair, (4) were the sale charges exorbitant? and finally
(d) Was the sale in violation of sections 60, 67 and 70 of the Bankruptcy Act (11 U.S.C.A. 96, 107, 110)?
The pertinent parts of said R.S. 46:28-5 are as follows:
"Every mortgage * * *, which shall not be accompanied by an immediate delivery and be followed by an actual and continued *63 change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, * * *, unless the mortgage, having annexed thereto an affidavit or affirmation, made and subscribed by the holder of such mortgage, his agent or attorney, stating the consideration of such mortgage and, as nearly as possible, the amount due and to become due thereon, be recorded" as provided by the act.
Among defendant's powers it has the power "Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers * * *." 12 U.S.C.A., Banks & Banking, sec. 24. In Cox v. First National Bank of Brea, 10 Cal. App.2d 302, 52 P.2d 524, 527 (Cal. D. Ct. App. 1935), we find that:
"A vice president is one of the officers of a national bank. Section 24, title 12 U.S.C.A. The cashier is also an important executive officer."
And as early as 1870 the United States Supreme Court said:
"The cashier is the executive officer, through whom the whole financial operations of the bank are conducted." Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 77 U.S. 604, 650, 19 L.Ed. 1008 (1870).
In Warner v. Penoyer, 91 F. 587, 590, 44 L.R.A. 761 (2d Circ. 1898), the court stated:
"The directors of a national banking association are authorized to appoint a cashier, and delegate to him all the usual powers of such an office, including the discounting of notes. Rev. St. U.S. 5136. To him is properly confided the custody of its property, money, securities, and valuable paper, and the supervision of its books and accounts. He is the executive officer, who transacts its daily affairs."
Finally, in the case of In re Harrison, 109 F. Supp. 614, 615 (D.C.N.J. 1953), the court said: "the cashier of a national bank is an executive officer * * *."
We conclude that the cashier of the defendant national bank is an executive officer in the same relation to the defendant as are its president or vice-president.
*64 May the cashier of a national bank execute an affidavit of consideration without recital of authority in said affidavit?
In American Soda Fountain Co. v. Stolzenbach, 75 N.J.L. 721 (E. & A. 1908), the court upheld a chattel mortgage under attack even though the affidavit of consideration was executed by a vice-president of the mortgagee with no recital of his authority. In that case we find the following affidavit of consideration:
 "County of Philadelphia, :
 : ss
 State of Pennsylvania, :
Alfred H. Lippincott, of full age, being duly affirmed according to law, saith that he is vice president of American Soda Fountain Co., the mortgagee named in the foregoing chattel mortgage; that the true consideration thereof is for one 20 Syrup 6 Draught `Penrose' Soda Water Apparatus with Mahogany Top and Fountains, One Cherry Refrigerator, one 6 ft. Oak sink and Sundries, and that the amount due and to grow due thereon is the sum of Two thousand two hundred and twenty-seven dollars, with interest on the same from the 1st day of August, A.D. 1901, which constitutes its interest in the goods and chattels mentioned in the schedule thereunto annexed.
 A.H. Lippincott,
 Vice President."
 (75 N.J.L., at pages 722, 723)

* * * * * * * *
"The second ground of attack of the defendant in error rests on two premises:
The first, that when a statutory affidavit is made by an agent or by an attorney specially appointed, the affidavit must demonstrate by recitation that the affiant is in fact such agent or attorney, is duly appointed, and that, in the making of the affidavit, he is acting within the scope of his authority.
The second, that a corporation cannot make such an affidavit per se, but only per alium by an agent or by an attorney.
Resting upon these premises the defendant in error urges that the affidavit of consideration in this case, reciting that the affiant is the vice president of the corporation, the holder of the mortgage, is a nullity, and that therefore the mortgage is void as against creditors.

* * * * * * * *
"* * * the statute specifically provides that the affidavit is to be made by the `holder' of the mortgage, adding in the alternative `his agent or attorney.' Inasmuch as a corporation may be a holder of a chattel mortgage, a judicial decision that as such holder it may make the affidavit only by an agent or attorney specially appointed *65 would rest either upon the denial of the right of a corporation to be a holder within the meaning of and entitled to the benefits of the statute, or else upon the assumed right of the court to nullify one of the three modes by which the Legislature has allowed the affidavit to be made. There is, however, no necessity for assuming either of these untenable positions. A corporation may be a holder of a chattel mortgage, and may make this statutory affidavit, as such holder, through its administrative officers, or it may make it by a duly-authorized agent or by its attorney." (75 N.J.L., at pages 725-726)
Our cases hold that the oath of a president of a corporation is in contemplation of law the act of the corporation. Lessler v. Paterson National Bank, 97 N.J. Eq. 396, 398 (Ch. 1925), affirmed on opinion below 99 N.J. Eq. 428 (E. & A. 1925); and Mitschele-Baer, Inc., v. Livingston Sand & Gravel Sales Co., 108 N.J. Eq. 286, 288 (Ch. 1931).
I conclude that, since our state decisions sustain the validity of a chattel mortgage executed by a president or vice-president of a corporation who are held to be executive officers, and since a cashier of a national bank is an executive officer by congressional definition, the cashier of the defendant national bank had the power to execute the affidavit of consideration without specific recital of authority. Cf. In re Gold, 93 F.2d 676 (3d Circ. 1937).
Next to be considered is plaintiff's claim that the affidavit of consideration was fraudulent. What was the legislative purpose in requiring the affidavit? I agree with defendant's contention that the purpose of the affidavit is to deter the creation of fraudulent liens and that it serves as a means of detection. Bruck v. Credit Corp., 3 N.J. 401 (1950). The general rule is that the affidavit should fairly apprize creditors in order to give them notice and that if this be done, honest and substantial compliance with the statute is sufficient. In Fasolo v. Regnu, Inc., 8 N.J. Super. 234, 237-238 (App. Div. 1950), Judge Colie said:
"We think that the sound rule as to what should go into the affidavit of consideration of a chattel mortgage is well stated in Bateman Bros. v. Jones, 109 N.J. Eq. 8 (Ch. 1931): `the legislative purpose in the enactment of the statute was to compel the *66 mortgagee to commit himself to a statement or disclosure of his debt or claim, under oath, * * * sufficiently precise and specific to afford the creditors of the mortgagor, in case fraud was suspected, a fair opportunity to ascertain, by judicial investigation or otherwise, whether the mortgage was an honest security or a mere fraudulent cover.'"
In Bruck v. Credit Corp., 3 N.J. 401, 412 (1950), Mr. Justice Burling said:
"There is no requirement in the statute that a statement respecting the disposition made of the loan be set forth. * * * It has been well established that in the absence of fraud the affidavit of consideration should be liberally construed. * * * Nor will fraud be presumed."
I do not hold that this chattel mortgage is "artlessly composed" (Jarecki v. Manville Bakery, Inc., 7 N.J. Super. 387 (Ch. Div. 1950)) but were it so I would still follow the admonition of the Court of Errors and Appeals for whom Judge Dill said:
"An affidavit of consideration is not to be tested by the rules of pleading nor treated as a technical requirement. On the contrary, it should be the aim of courts, when the mortgage is bona fide, to preserve and not to destroy, and, as Sir Matthew Hale said, the court should be astute to find means to make such instruments effectual according to the honest intent of the parties. Roe v. Tranmarr, Willes 682." Howell v. Stone & Downey, 75 N.J. Eq. 289, 290-291 (E. & A. 1909).
The testimony shows that the defendant's chattel mortgage was given priority over the chattel mortgage given to Hoffman. The affidavit of consideration in defendant's chattel mortgage does not refer to this fact. Both chattel mortgages were recorded at the same time. Plaintiff contends, but no proof is submitted, that defendant would not have made the loan and accepted the chattel mortgage unless it was given such priority. Plaintiff concludes that consequently the fact of priority was a real consideration for the chattel mortgage. Plaintiff cites Jarecki v. Manville Bakery, Inc., 7 N.J. Super. 387 (Ch. Div. 1950) (in which the affidavit recited *67 consideration of $17,000, whereas the true amount was $10,000); Sickinger v. Zimel, 6 N.J. 149 (1951); and Wisner Manufacturing Co. v. Second National Bank & Trust Co. of Red Bank, New Jersey, 111 N.J. Eq. 535 (Ch. 1932).
These cases are authority for the proposition that the affidavit must state the true consideration. The true consideration is stated in the present case and these authorities do not counter the conclusion that the affidavit of consideration here given constitutes an honest intent to comply substantially with the statute.
Plaintiff additionally contends that where a mortgagee becomes a purchaser at a foreclosure sale at which the chattels were sold unfairly and at an underprice, the foreclosure sale will be set aside by a court of chancery. That is a correct expression of the law. The mortgagee on a foreclosure sale will be held at his peril to deal fairly and justly with the property at the sale. Geiger v. Metz, 11 N.J. Super. 134, 139 (Law Div. 1950). I am not impressed by the attack on the time of sale and can find no substance to plaintiff's charge on that ground.
The testimony shows that defendant purchased the chattels at the sale for $1,000 and that the chattels were subsequently sold for $1,500. Although the financial statements and estimates of the value of the chattels by Scheier were on their face much higher in value, the estimates did not stand up at trial. In my opinion Scheier's statements were typical puffed up values for the purpose of obtaining credit. Moreover no credible testimony was adduced which would permit a conclusion that the same mortgaged chattels were still in existence at the time of sale. A reading of the chattel mortgage shows that many of the items were, by their nature, usable and expendible in the operation of a garage business.
The amount due at the time of sale was $1,700 plus interest of $19.15, and the costs of the sale were $8.64 for newspaper advertisement and a constable's fee of $10. In view of these facts it is my conclusion that the purchase price of $1,000 was a reasonable price and that defendant's resale at a price of $1,500 does not alter this conclusion.
*68 Plaintiff's final contention is that the chattel mortgage is avoidable under sections 96, 107 and 110 of the Bankruptcy Act, 11 U.S.C.A. 11 U.S.C.A. 96(a), entitled "preferred creditors," provides that preferential transfer to a creditor while insolvent and within four months before the filing of the petition of bankruptcy is voidable. Defendant's chattel mortgage was executed July 30, 1953; the petition was filed July 20, 1954, so it cannot be an avoidable transfer within section 96. Section 107 contains several provisions not applicable as they are limited to within four months of bankruptcy, and refers to chattel mortgages given "without fair consideration." Section 110 provides in subsection (e) that transfers voidable for fraud under federal or state laws are void against the trustee of the bankrupt debtor. No testimony was adduced showing a fraudulent transfer under R.S. 25:2-7 et seq. Defendant paid to Scheier $2,500. The amount was fair and full consideration.
There is no merit in plaintiff's contentions concerning the application of the Bankruptcy Act.
I conclude that the cashier of defendant bank had authority by virtue of his office to execute the affidavit of consideration without a recital of specific authority to do so; that the affidavit of consideration complied with the statutory requirements and was not fraudulent; that the chattel mortgage sale was proper; and that defendant's chattel mortgage did not violate the Bankruptcy Act.
Submit judgment.