The **FIRST NATIONAL BANK OF DANVILLE, Indiana and M. Dale Palmer, Appellants (Defendants Below),**

v.

George W. **REYNOLDS, Appellee (Plaintiff Below),**

Henry M. Haase, John L. Munn, Paul Walthers, Russell Webb, Jr., and Eldon Ploetz, Appellees (Defendants Below).

No. 4–285 A 31.

Court of Appeals of Indiana, Fourth District.

April 16, 1986.

Rehearing Denied May 30, 1986.

David B. Hughes, Hughes & Hughes, Indianapolis, Robert M. Shaffer, Morrison, Robbins & Shaffer, Frankfort, for appellants.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, David A. Redmond, Frankfort, for appellees.

CONOVER, Judge.

This is an interlocutory appeal in which the First National Bank of Danville, Indiana, and M. Dale Palmer (collectively, the Bank) challenge the trial court's denial of their motion to dismiss the plaintiff's amended complaint.

We affirm

ISSUES

This interlocutory appeal presents the following issues:

1. whether section 24 of the National Bank Act (12 U.S.C. § 24) voids a provision in a bank president's written employment contract guaranteeing payment of a stipulated sum should the president resign for cause specified in the contract, and

2. whether the complaint states a claim against Palmer for tortious interference with a contractual right.

Also, we raise a third issue *sua sponte:*

3. whether this is a frivolous interlocutory appeal warranting the imposition of damages, costs, and attorney fees against the Bank.

FACTS

Appellee George W. Reynolds's (Reynolds) amended complaint alleges the Bank employed him for a fixed period as its president under a written employment agreement. Concerning termination of his employment the contract read in part

*Section 8. Termination.* This agreement may be terminated by either party on ninety (90) days written notice to the other. . . . Provided, however, that in the event that during the term of this agreement twenty-five per cent (25%) or more of the ownership of Employer's institution shall be transferred during any twelve (12) month continuous period, then Employee shall have the option of terminating this agreement with compensation as hereinabove set forth.

Sections 3 and 4 provided a three year term of employment at $45,000 per year commencing in September, 1981, and terminating in September, 1984.

During the twelve month period immediately prior to July 21, 1983, more than 25% of the bank's corporate stock was transferred. On that date, Reynolds tendered his resignation in writing to the bank's board of directors effective 90 days thereafter, as provided in the contract. The board accepted his resignation by resolution and agreed to pay the compensation due him under the agreement, easily calculated to be $36,-346.17 from the effective date of his resignation. However, the board of directors later rescinded its resolution to honor its contract with Reynolds in that regard.

The complaint further alleges, (a) Palmer, one of the Bank's major stockholders and a member of the board, knew of Reynolds's employment contract, but intentionally and wrongfully induced the bank to breach its contract with Reynolds, and (b) the bank is estopped from refusing to honor its promise to him regarding payment of damages upon his resignation for just cause.

Further facts as necessary appear in the later portions of this opinion.

DISCUSSION AND DECISION

I.

*National Bank Act Does Not Void Severance Pay Provisions on President's Resignation*

■ This interlocutory appeal questions the trial court's overruling of the Bank's motion to dismiss plaintiff's amended complaint. Because we accept the allegations of the complaint and the reasonable inferences arising therefrom as true in such cases, only questions of law concern us. Our standard of review here is the same as it is in summary judgment cases presenting only questions of law for review. *Ind. & Mich. Elec. Co. v. Terre Haute Indus.* (1984), Ind.App., 467 N.E.2d 37, 42; *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242, 1245. We here determine only whether the trial court has correctly applied the law. *Brokus*, 420 N.E.2d at 1242–1243.

Initially, the Bank admits it understands the applicable standard of review in the trial court and here. It says

First National Bank and Palmer acknowledge at the outset that they are familiar with and understand the standard utilized by a trial court when deciding whether to grant or deny a motion to dismiss for failure to state a claim upon which relief can be granted. The essence of such standard is that, in a typical Trial Rule 12(B)(6) situation, a complaint is *not* subject to dismissal *unless* it appears *to a certainty* that the plaintiff would not be entitled to relief under any set of facts. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, at 606. Further, in considering a motion to dismiss under Trial Rule 12(B)(6), the well-plead (sic) allegations of the complaint are taken as true and the plaintiff is entitled to all reasonable inferences which could be drawn therefrom. *Gladis v. Melloh* (1971), 149 Ind.App. 466, 273 N.E.2d 767. This Court applies *essentially the same standard* in deciding whether or not a trial court erred in ruling on a Trial Rule 12(B)(6) motion. (Emphasis ours).

(Appt's. Brief, pp. 19–20). After that admission, the Bank asserts the National Bank Act barred each and all of Reynolds's claims against the Bank, citing Section 24 of the National Bank Act, 12 U.S.C. ¶ 24 as authority. That section provides in part

Upon duly making and filing articles of association and an organization certificate the [national banking] association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power

.　　.　　.　　.　　.

Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require

bonds of them, and fix the penalty thereof, *dismiss such officers* or any of them *at pleasure* and appoint others to fill their places. (Emphasis supplied).

The Bank then cites seven cases in support of its assertion under

the rationale of the holdings construing Section 24 ¶ Fifth, [the public policy of the Act] is simply that a national bank may not be burdened by a financial obligation to an officer for a fixed period which the bank does not wish to maintain. In order to be free of the obligation, *the Act permits* the board of directors of *a national bank* to *dismiss any officer at its pleasure with impunity,* regardless of any contrary provisions in the employment agreement. (Emphasis supplied).

(Appellant's Brief p. 24). The cases the Bank cites support the above emphasized portion of its contention, *cf. Vanslyke v. Andrews* (1920), 146 Minn. 316, 178 N.W. 959; *Copeland v. Melrose National Bank* (1930), 229 A.D. 311, 137 Misc.Rep. 86, 241 N.Y.S. 429; *Kozlowsky v. Westminster National Bank* (1970), 6 Cal.App.3d 593, 86 Cal.Rptr. 52; *McGeehan v. Bank of New Hampshire, National Association* (1983), 123 N.H. 83, 455 A.2d 1054; *Kemper v. First National Bank in Newton* (1981), 94 Ill.App.3d 169, 49 Ill.Dec. 799, 418 N.E.2d 819; *Armano v. Fed. Reserve Bank of Boston* 468 F.Supp. 674, S.D.Mass., (1979); *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir., 1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662, but these cases are silent as to the balance of the Bank's assertion. Because resignation with cause, not dismissal, is at issue here, these cases are not on point.

Then, in an apparent attempt to create a nexus between the cases it cites and the issue here, the Bank asserts

By the application *of simple logic,* such section of the National Bank Act *also renders unenforceable, as against public policy,* all "golden parachute" provisions in employment agreements which would purport to require a national bank

to continue to pay salary to an officer after such officer has resigned, has been replaced, and the board of directors of the bank has chosen to terminate further salary payment. (Emphasis supplied).

(Appt's. Br., p. 24). However, the Bank does not demonstrate the "simple logic" it claims leads inevitably to that conclusion, nor does it cite cogent authority in support thereof.

The Bank's claim clause Fifth voids the contract provision here at issue simply melts away in the presence of overwhelming countervailing authority. In opposition to the Bank's claim, Reynolds cites *Mitchell v. American Savings and Loan Ass'n.* (App., 1979), 122 Ariz. 138, 593 P.2d 692. There, the court upheld an agreement for severance pay made by the Association's board of directors and a vice-president whose employment was terminable at the will of either party, if he would voluntarily resign and cooperate with his replacement during the transition period rather than be fired. When the Association later reneged, the former vice-president sued. The court in the teeth of an Arizona general rule declaring void as against public policy agreements in which bank officers accept pecuniary consideration in exchange for their resignations from office, said

[G]enerally an agreement for a corporate officer to resign his office for a pecuniary benefit to himself would be void. [Footnote citations omitted.] But it often happens that a blind and unreasoning application of a "general rule," in the absence of the circumstances it was intended to apply to, results in defeating rather than serving the interest of justice.... The proper function of rules is to serve the ends of justice. Conversely, where the circumstances are such that no such evil or any likelihood of it exists, the rule has no proper application. And this is true, a fortiori, where invocation of the rule would bring about an unjust and inequitable result.

*Mitchell,* 593 P.2d at 694. The court held because the officer in question was not deserting his office for his own gain but

was acting only in his own best interest and "the best interests of the corporation in tendering his resignation", public policy was not violated. It determined his agreement was enforceable against the Association. *Mitchell,* 593 P.2d at 694. The bank eschews *Mitchell* because "a national bank or the National Bank Act was [not] involved", but again cites no cogent authority demonstrating *Mitchell's* learning does not apply to the facts before us.

Next, Reynolds cites a current regulation promulgated "under the National Bank Act" which says

The board of directors of a national bank, pursuant to *¶ fifth of 12 U.S.C. § 24,* may enter into *employment contracts* with *its officers* and employees *upon reasonable terms and conditions.* (Emphasis supplied).

*Cf.,* 12 CFR 7.5220, 36 F.R. 17000. The Bank acknowledges this regulation and states in its reply brief it "has been in effect since 1971."

Further, rudimentary principles of statutory construction apply here, and conclusively demonstrate the indefensibility of the Bank's position on this question.

When construing a federal statute it is appropriate to assume the ordinary meaning of the language employed by Congress accurately expresses the legislative purpose. *Mills Music, Inc. v. Snyder,* (1985) 469 U.S. 153, 105 S.Ct. 638, 645, 83 L.Ed.2d 556. It should generally be assumed Congress expresses its purpose through the ordinary meaning of the words it uses. *Escondido Mutual Water Co. v. La Jolla, Etc. Bands of Mission Indians* (1984), 466 U.S. 765, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753. In determining the scope of a statute, one is to look first at its language, and absent clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. *North Dakota v. U.S.* (1983), 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77.

The terms "dismiss" and "resign" are not synonymous, indeed they are antithetical. "Dismiss" is defined as

To send away; to discharge; to cause to be removed temporarily or permanently; to relieve from duty....

*Black's Law Dictionary,* Revised Fourth Edition, West Publishing Co., 1968. On the other hand, "resign" means

... 2: to give up deliberately: renounce by a considered or formal act: RELINQUISH ...

*Webster's Third New International Dictionary,* G. & C. Merriam Co., 1976, and "resignation" is defined as

Formal renouncement or relinquishment of an office.... It must be made with intention of relinquishing the office accompanied by act of relinquishment....

*Black's Law Dictionary, supra.* Clearly, the terms are mutually exclusive.

■ Further, if the statute is deemed ambiguous or of doubtful construction, reference to a clarifying regulation or one indicating the method of its application to specific cases is permissible when construing it. Great weight is to be given to an administrative regulation long and consistently followed. *Koshland v. Helvering* (1936), 298 U.S. 441, 445, 56 S.Ct. 767, 769, 80 L.Ed. 1268. 2 C.F.R. 7.5220, permitting national banks to enter into reasonable employment contracts with its officers and employees has been consistently followed since its promulgation in 1971.

■ Finally, Indiana permits contracts for additional compensation between bank officers and national banks. Our Supreme Court in 1896 recognized the right of national bank officers to additional compensation if provision was made therefor by contract with the bank. It said

In Thompson's Commentaries of the Law of Corporations (volume 4, § 462), the rule with reference to the question presented by this plea is stated thus: "The president of a corporation is always a member of its board of directors. In addition to his function to preside at meetings of the board, and together with the secretary, and by means of the corporate seal (where a seal is required), to authenticate and affirm acts and con-

tracts of the corporation. In respect to his rights to compensation, he is subject, ordinarily, to the rule already stated with regard to directors. He is not entitled to any compensation for performing the ordinary duties of his office, *unless* the governing statute, or *some* by-law, regulation, or *contract,* to which his own vote was not essential, *had given it to him.* As the law does not imply an agreement to pay for such services, in order for him to recover compensation for them *he must,* at least, *show an antecedent valid agreement to pay for them."* That the proposition stated in the text is correct we have no doubt; that it is well fortified by the decisions we know; and that the same rule applies to the office of vice president it is needless to suggest. (Citing cases) (Emphasis supplied).

*Blue v. Capital National Bank* (1896), 145 Ind. 518, 521–522, 43 N.E. 655, 656–657. Such contracts do not violate Indiana public policy.

## II.

### *Cause of Action as to Palmer*

 The Bank next argues Palmer cannot be held liable for inducing the Bank's directors not to honor the Bank's contract with Reynolds in this regard because the contract was "illegal, void, and unenforceable, and he is not liable for urging the board to do its duty," citing *Lane v. Chowning,* (C.A.8, 1979) 610 F.2d 1385, 1389–90, in support of that proposition. As discussed above, Reynolds here was not terminated, he resigned. *Lane,* again, is a dismissal case. It is not cogent authority as to Palmer's liability for interference with the contractual relationship existing between Reynolds and the Bank regarding resignation with cause.

Indiana has long recognized the tort of interference with a contract relationship by inducing a breach of contract. *Monarch Industrial Towel & Uniform Rental, Inc. v. Model Coverall Service, Inc.* (1978), 178 Ind.App. 235, 381 N.E.2d 1098, 1099. Thus, the amended complaint states an enforceable cause of action against Palmer.

We deem it unnecessary to discuss Reynolds's equitable estoppel theory. The above discussion demonstrates something more than a possibility Reynolds may be entitled to some relief from each defendant under some set of facts provable at trial. Thus, the trial court's overruling of the Bank's motion to dismiss was correct in all particulars. *Rankin,* 294 N.E.2d at 606; *Gladis,* 273 N.E.2d at 769. In a word, this appeal was meritless from the outset. We will not impose sanctions under A.R. 15(G) for that reason alone, however, because the mere fact an appeal is meritless, without more, does not so warrant.

Affirmed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.