PARKER, Judge.
Appellants, Loue E. Stockwell, Jr., and Camille L. Larose seek review of the trial court’s dismissal of their amended complaint.[1] We affirm the trial court’s dismissal of Counts II-IV, VI, and VII but reverse the trial court’s dismissal of Count I and certify conflict with the Third District Court of Appeal.
The facts set out in this opinion are alleged in the amended complaint. In February 1988 the Office of the Comptroller of the Currency (OCC) gave Citizens National Bank and Trust Company (Citizens) authority to operate as a national bank. Later that year Appellants began contract negotiations with Citizens for employment as executive officers and entered into employment contracts with Citizens. The parties amended these contracts in 1990. Both agreements provided for a ten-year term of employment, commencing in February 1988. Appellants were aware of the National Bank Act and agreed to a clause in their contracts which permitted termination without cause. Paragraph eight of the contracts state:
This Agreement shall terminate upon the first to occur of the following:
[[Image here]]
(e) Termination by the Bank without cause, including termination in the event of merger, acquisition or consolidation of the Bank, provided that in such event the Bank shall pay to Executive an amount equal to Executive’s base salary (based on Executive’s base salary in effect on the date of termination) for the remainder of the term of the Employment Agreement payable in equal monthly installments over the balance of the term of this Agreement, or in a lump sum, in the discretion of the Executive.
The contract also contained provisions for stock options and other benefits which would accrue to Appellants even if their employment was terminated before the end of the ten-year period. The Board of Directors of Citizens acknowledged the employment contracts. The OCC reviewed the contracts in August 1993 and approved their form, including the severance provisions. Appellants fully performed their duties as executive officers of Citizens.
During the time of Appellants’ employment with Citizens, Southtrust Corporation and Southtrust Bank of Pinellas County and Citizens were engaged in merger negotiations. Southtrust offered Citizens a higher price per share if the bank stock could be purchased without the assumption of Citizens’ existing employment contracts. At a special meeting of the Board of Directors in September 1993, Citizens notified Appellants that their employment was terminated without cause. Citizens requested that Appellants execute releases in exchange for stock options and deferred compensation payments, which Appellants refused to do. Citizens did not pay Appellants the wages, severance pay, and benefits which the employment contracts required.
In September 1993 Appellants filed a six-count action against Citizens and its directors. Citizens filed a motion to dismiss on the ground that a provision of the National Bank Act[2] precluded the claims. In December 1993 Appellants filed a seven-count amended complaint. The counts pertinent to this appeal are: Count I — breach of contract; Count II — breach of implied covenant of good faith; Count III — tortious interference; Count IV — conspiracy; Count VI — breach of fiduciary duty; and Count VII — failure to comply with corporate requirements and material omissions.
This case boils down to a single issue: Whether federal statutes and regulations permit a national bank to enter into a contract with an employee and thereafter ignore the terms of the contract which provided for *1222 termination benefits. The National Bank Act provides that national banks “have power ... [t]o elect or appoint ... officers, define their duties, require bonds on them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.” 12 U.S.C. § 24, para. 5 (1988). In 1971 the OCC promulgated 12 C.F.R. § 7.5220, which states: “The board of directors of a national bank, pursuant to paragraph Fifth of 12 U.S.C. § 24, may enter into employment contracts with its officers and employees upon reasonable terms and conditions.”
Only three reported cases have cited to 12 C.F.R. § 7.5220, First National Bank of Danville v. Reynolds, 491 N.E.2d 218 (Ind.Ct.App.1986), Schmidt v. Park Avenue Bank, N.A., 147 Misc.2d 1043, 558 N.Y.S.2d 779 (N.Y.Sup.Ct.1990), and Ewert v. Drexel National Bank, 208 Ill.Dec. 431, 649 N.E.2d 487 (1995). Because Reynolds involved a bank president who resigned, we conclude that it cannot be applied to the facts of this case. In Schmidt a bank entered into a written employment contract with Schmidt as an officer of the bank. The contract provided for severance pay upon termination. Schmidt argued that the bank constructively terminated him. The bank refused to pay any severance benefits, and Schmidt filed suit. The bank filed a motion to dismiss for failure to state a cause of action pursuant to the National Bank Act. The bank argued that the National Bank Act allowed the bank to dismiss officers without incurring any liability and that the liquidated damages clause in the employment contract impermissibly limited the bank’s ability to terminate its officers. Schmidt relied on 12 C.F.R. § 7.5220, which expressly permitted reasonable employment contracts. The court agreed with Schmidt and held that the bank could not avoid its contractual liability for severance pay even though the bank was free to terminate Schmidt without fear of liability for wrongful termination.
An Illinois appellate court recently addressed a situation very similar to the instant case. In Ewert the plaintiff was the president and chief operating officer of the defendant national bank. The parties had executed an employment agreement for a three-year term. The bank could discharge the plaintiff without cause at any time but would be required to pay the plaintiffs salary for the remaining period of the agreement. The bank terminated the plaintiffs employment and failed to pay him all of the severance benefits due under the agreement. The plaintiff filed an action against the bank for recovery of the severance benefits under the alternative theories of breach of contract and promissory estoppel. The Ewert court recognized that the National Bank Act precluded a bank officer’s suit for wrongful termination but held that the regulation supported the view that a bank officer may enforce a provision in an employment agreement which provides for severance benefits. The court affirmed a summary judgment in favor of the plaintiff.
The trial court in the instant case dismissed the amended complaint, correctly believing that it was bound to follow the Third District’s decision in International Bank of Miami v. Bennett, 513 So.2d 1294 (Fla. 3d DCA 1987), cert. denied, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988). The Bennett court relied upon 12 U.S.C. § 24, para. 5 (1982) and held that a bank could ignore an employment contract it had executed with its bank president and not honor the contract to pay the president a year’s salary at termination. Bennett and the case upon which it relied, Rohde v. First Deposit Nat’l Bank, 127 N.H. 107, 497 A.2d 1214 (1985), never discussed the effect of 12 C.F.R. § 7.5220. We disagree with Bennett and certify conflict.
Appellants are entitled to have their employment contracts have meaning. The statute clearly provides that a bank officer serves at the pleasure of the board; therefore, a discharged bank officer cannot sue for wrongful termination.[3] The statute, however, does not address whether a national bank must pay a discharged officer termi *1223 nation benefits for which the parties contracted. The regulation clarifies this point and allows a national bank and its officers to enter into employment contracts with reasonable terms and conditions. It is logical and just that the bank officer may enforce any and all reasonable terms and conditions contained in the employment agreement.
Appellees argue that the regulation allows employment contracts which cover only the period in which the employee remains employed at the bank and not any severance benefits. We hold that this interpretation is an unreasonable limitation upon the language of the regulation. Appellees also argue that based upon the numerous banking scandals in the recent past, public policy demands that a national bank must have the right to replace bank officers “at pleasure.” We conclude the policy would encourage just the opposite effect. A talented individual with banking expertise would not want to leave a solid employment position for another position at a national bank if that individual knew that the national bank could ignore the termination benefits in an employment contract.
We conclude that Counts II-IV, VI, and VII challenge the decision to terminate the Appellants’ employment or are based on facts which surround that decision. We, therefore, affirm the trial court’s dismissal of these counts. We, however, hold that Count I seeks to enforce the severance benefits provided for in the employment contracts; therefore, the trial court erred in dismissing Count I. We reverse the order as it relates to Count I and remand this case to the trial court. In doing so, we certify conflict with Bennett.
Affirmed in part; reversed in part.
DANAHY, A.C.J., and QUINCE, J., Concur.

. Appellants did not appeal the dismissal of Count V which was for retaliation.

. 12 U.S.C. § 24, para. 5 (1988).

. We recognize that a dismissed bank officer may be allowed to sue for violation of the Age Discrimination in Employment Act and the Employee Retirement Income and Security Act. See Mueller v. First Nat'l Bank, 797 F.Supp. 656 (C.D.Ill.1992).