[No. B085724. Second Dist., Div. Three. Mar. 15, 1996.]

JOHN J. MARDULA, JR., Plaintiff and Appellant, v.
RANCHO DOMINGUEZ BANK et al., Defendants and Respondents.

**COUNSEL**

Rehwald, Rameson, Lewis & Glasner and William Rehwald for Plaintiff and Appellant.

Daniel Roberts, in pro. per., Roberts & Roberts and Theodore K. Roberts for Defendants and Respondents.

## OPINION

**KLEIN (Brett), J.**[*]—John J. Mardula, Jr., appeals from an order of dismissal, entered after a demurrer was sustained, without leave to amend, to both claims pleaded in his complaint against respondents Rancho Dominguez Bank and Daniel Roberts. The appeal presents a question not yet decided by a California or federal court: whether section 8 of the National Bank Act (12 U.S.C. § 24), which provides that all officers of a national bank serve at the pleasure of its board of directors, precludes enforcement of a bank's written agreement that its president will receive severance pay if discharged without cause. We hold the severance pay agreement is enforceable.

### I.

The complaint alleged the following facts. Rancho Dominguez Bank, a national bank, hired plaintiff in 1992 as president/chief executive officer, at an annual salary of $100,000. Plaintiff's ten-page employment agreement provided that plaintiff could be fired at any time without cause, but if he were—and if he had by then served for at least one year—he would receive severance pay equal to six months' salary. In 1994 the bank's board of directors fired plaintiff but refused to pay him severance pay exceeding one month's salary. In one count, plaintiff sought to collect the agreed-on severance pay. In the second count, plaintiff accused the bank and Roberts (a director) of tortiously denying "the existence of a lawful contract."

The basis of the demurrer was a provision of the National Bank Act of 1864, 12 United States Code section 24, which provides that a national bank's officers may be dismissed at the pleasure of its board of directors.[1] Respondents contend the contractual provision for severance pay is unenforceable because irreconcilable with the federal statute. We agree with plaintiff, however, that there is no inconsistency between the statute and a contract provision for a reasonable amount of severance pay.

---

[*]Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

[1]A national banking association "shall have power— [¶] . . . [¶] Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." (12 U.S.C. § 24, hereafter referred to as section 24.)

## II.

The case reports are replete with decisions, based on section 24, that the firing of an officer of a national bank by its board of directors cannot be a wrongful act. One such case, *Aalgaard* v. *Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 686-695 [274 Cal.Rptr. 81], thoroughly surveyed the field, and it would serve no purpose to repeat or update what was said there. We note only that the cases demonstrate that section 24, and similar provisions covering employees of Federal Reserve Banks (12 U.S.C. § 341) and federally chartered thrift institutions (12 U.S.C. § 1432(a)) bar covered officers or employees from claiming that their discharge constituted (a) breach of a written employment contract (e.g., *Kemper* v. *First Nat. Bankin Newton* (1981) 94 Ill.App.3d 169 [49 Ill.Dec. 799, 418 N.E.2d 819] [bank president fired without cause before end of one-year term]); (b) breach of an oral promise of continued employment (e.g., *Mueller* v. *First Nat. Bank of the Quad Cities* (C.D.Ill. 1992) 797 F.Supp. 656, 660 [fired executive vice-president claimed breach of an oral agreement to employ him until he found another job]); (c) breach of an implied agreement for continued employment (e.g., *ibid.* [fired executive vice-president also claimed breach of a contract implied from provisions in the employee handbook]); (d) breach of the implied covenant of good faith and fair dealing (e.g., *Aalgaard*, *supra*, 224 Cal.App.3d at pp. 689-692); (e) breach of a state law principle forbidding discharge on grounds that contravene public policy (*Inglis* v. *Feinerman* (9th Cir. 1983) 701 F.2d 97, 99 [vice-president of Federal Home Loan Bank of San Francisco claimed, inter alia, that he was fired for "his insistence that the Bank conform its practices to federal law"]); and (f) violation of state antidiscrimination statutes (e.g., *Ana Leon T.* v. *Federal Reserve Bank of Chicago* (6th Cir. 1987) 823 F.2d 928, 931 [employee claimed she was fired in violation of state law forbidding employment discrimination based on national origin]; but see *Moodie* v. *Federal Reserve Bank of New York* (S.D.N.Y. 1993) 831 F.Supp. 333, 336-337). They do not, however, appear to bar claims that the discharge violated federal antidiscrimination statutes. (E.g., *Mueller* v. *First Nat. Bank of the Quad Cities*, *supra*, 797 F.Supp. 656, 660-663 [Age Discrimination in Employment Act of 1967 and Employee Retirement Income and Security Act of 1974 claims not barred]; *In re Sweeney* (Bankr.N.D. Ohio 1990) 113 Bankr. 359, 364 [bankruptcy discrimination claim not barred]; *Scott* v. *Federal Reserve Bank of New York* (S.D.N.Y. 1989) 704 F.Supp. 441, 447-448 [title VII claim not barred]; cf. *Bollow* v. *Federal Reserve Bank of San Francisco* (9th Cir. 1981) 650 F.2d 1093, 1100 [rejecting claim that age discrimination statute creates entitlement to continued employment at bank].)

These cases implement a forceful public policy that a nationally chartered bank must be free to remove and replace its officers at will. *Westervelt* v.

*Mohrenstecher* (8th Cir. 1896) 76 Fed. 118, 122, explained this policy well: "[I]t is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them." So did *Aalgaard* v. *Merchants Nat. Bank, Inc.*, *supra*, 224 Cal.App.3d 674, 689: "[A]t the heart of this inviolable dismissal provision is a linkage with public policy protecting the financial stability and fiscal integrity of banks by making it beyond the powers of bank directors to enter into any contract restricting their ability to respond expeditiously to financial threats posed by bank officers." The policy is one of long standing; the "at pleasure" language has been in the statute for 131 years. (Act of June 3, 1864, ch. 106, § 8, 13 Stat. 101.)

## III.

The question before us in this case, however, is not whether plaintiff's discharge from employment was a wrongful act; plaintiff agrees it was not. Rather, the question is whether section 24 renders unenforceable the parties' bargain concerning severance pay.

In *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082 [282 Cal.Rptr. 841, 811 P.2d 1025], the plaintiffs were discharged by bank officials other than the board of directors. The court held that section 24 does not authorize at-will termination unless the termination is effected by the board of directors itself.[2] Although this decision is not on point, respondent bank relies heavily on the following remark found in our Supreme Court's opinion: "It has been established for almost a century that section 24 preempts all state law causes of action by a bank officer for breach of an employment agreement. [Citations] We are aware of no decision to the contrary . . . ." (53 Cal.3d at pp. 1087-1088.) The cases cited were *Mackey* v. *Pioneer Nat. Bank* (9th Cir. 1989) 867 F.2d 520, 524-526, and *Westervelt* v. *Mohrenstecher*, *supra*, 76 Fed. 118. Neither of the two cited cases involved a claim for severance pay. (Nor did *Wells Fargo Bank* itself.)

In *Mackey*, the bank's executive vice-president claimed he was hired by the bank president and wrongfully fired by the executive committee of the board of directors; he conceded that if it was the board of directors who had hired him and fired him, he could be fired at will, but contended that

---

[2]Compare *Mahoney* v. *Crocker Nat. Bank* (N.D.Cal. 1983) 571 F.Supp. 287, 290-292 (dictum: board of directors can delegate its section 24 dismissal authority in the corporation's bylaws).

section 24, while barring his contract claim, would not affect his tort claims. (867 F.2d at pp. 524-525.) The court ruled that he was an officer hired and fired by the board of directors, and held that section 24 barred his tort claims. The court observed that section 24 "has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ." (867 F.2d at p. 524.)

*Westervelt* presented a much different issue: whether a bond given to ensure the fidelity of the bank's cashier expired automatically at the end of the cashier's initial one-year term of office. The court held the bond remained in effect until the cashier was removed from office or resigned. It observed that under section 24, the cashier's term in office was not defined by the successive one-year periods for which the bank appointed him, but rather by a continuing tenure, subject to instantaneous removal at the pleasure of the board of directors.

Several other cases, in California and elsewhere, contain similar broad language to the effect that section 24 preempts all breach of contract claims. But these cases did not involve severance pay, with the exception of six cases we will discuss below. An example is *Cox* v. *First Nat. Bank* (1935) 10 Cal.App.2d 302, 305 [52 P.2d 524], which contains a statement that a term contract with a national bank's cashier "is void and does not prevent his removal at any time by the board of directors. It will not support an action for damages for discharge nor permit recovery of salary accruing after such discharge." This statement did not bear on any issue in the case, however; the court's ruling was that the evidence was insufficient to sustain the discharged cashier's factual assertion that while still employed he accrued vacation time and was paid less than the salary fixed by the board of directors.

An interpretive ruling by the United States Comptroller of the Currency, codified in the Code of Federal Regulations, provides that the board of directors of a national bank "may enter into employment contracts with its officers and employees upon reasonable terms and conditions." (12 C.F.R. § 7.5220 (1995).) Further, a national bank may adopt reasonable bonus, profit-sharing, stock option, and pension plans. (12 C.F.R. §§ 7.5000, 7.5010, 7.5015 (1995).) These rulings do not mention severance pay, but we observe that as a general matter, if a bank may enter into such contracts, surely it can be compelled to perform them.

IV.

There appear to be no federal cases on section 24 and severance pay. Of the six sister-state decisions we have found, only two invalidated severance pay agreements.

In *Copeland* v. *Melrose Nat. Bank* (1930) 229 A.D. 311 [241 N.Y.S. 429], affd. mem., 254 N.Y. 632 [173 N.E. 898], the court invalidated the bank's agreement to continue paying its fourth vice-president his $8,000 annual salary through the end of his three-year term as "liquidated damages" if it were to fire him earlier. (The bank discharged him 14 months into his term.)

Sixty years later, though, a New York trial court, declining to follow *Copeland,* upheld a severance pay agreement. (*Schmidt* v. *Park Avenue Bank* (1990) 147 Misc.2d 1043 [558 N.Y.S.2d 779].) There the parties agreed that if the bank fired its executive vice-president without cause within two years, it would pay him one year's salary ($110,000) over the ensuing year. He served 18 months before his employment was terminated. The court held the salary continuation agreement did not violate section 24, relying on the Comptroller's interpretive ruling (12 C.F.R. § 7.5220 (1995)), as undermining *Copeland.*

The other decision striking down a severance-pay agreement was *International Bank of Miami* v. *Bennett* (Fla.Dist.Ct.App. 1987) 513 So.2d 1294, certiorari denied, 485 U.S. 988 [99 L.Ed.2d 501, 108 S.Ct. 1291] (1988). There the bank, following a national search, hired a New Jersey banker as its new president, thereby inflicting on him a relocation to Florida. His three-year contract afforded him a year's salary (nearly $90,000), in the event of premature termination without cause, "as liquidated damages and severance pay." This was held "directly contrary to the untrammelled right to dismiss officers 'at pleasure.' " (513 So.2d at p. 1295.)

The opposite conclusion, however, was reached recently by another district of Florida's District Court of Appeal. (*Stockwell* v. *Citizens Nat. Bank & Trust Co.* (Fla.Dist.Ct.App. 1995) 655 So.2d 1220.) There the bank gave 2 officers 10-year employment agreements containing a provision that if an officer were discharged without cause, he would be paid his base salary, without raises, until the end of the 10-year term, and would also receive other benefits not described in the court's opinion. The officers alleged that the Comptroller had reviewed these agreements and approved them. Five years into the term, the bank fired both officers without cause and refused to honor its agreement. The court held that the officers could not sue for wrongful termination, but could enforce "all reasonable terms and conditions contained in the employment agreement." (655 So.2d at p. 1223.) It viewed the issue as "[w]hether federal statutes and regulations permit a national bank to enter into a contract with an employee and thereafter ignore the terms of the contract which provided for termination benefits." (*Id.* at pp. 1221-1222.) It certified that its decision was in conflict with *Bennett,* and the Supreme Court of Florida granted review on October 17, 1995. (662 So.2d 931.)

A severance pay agreement was upheld in *First Nat. Bank of Danville* v. *Reynolds* (Ind.Ct.App. 1986) 491 N.E.2d 218. There the bank president's three-year employment was terminable by either party upon ninety days' notice, and the contract provided that if more than a quarter of the bank's shares changed hands, the president could, upon resignation, receive compensation according to a formula. Approximately two years into the three-year term, the share contingency occurred, and the president, whose annual salary was $45,000, resigned and demanded the $36,346 due him under the formula. The court rejected the bank's contention that this agreement violated section 24, in part because the president resigned and was not discharged.

Finally, a severance pay agreement was upheld recently in *Ewert* v. *Drexel Nat. Bank* (1995) 271 Ill.App.3d 1124 [208 Ill.Dec. 431, 649 N.E.2d 487]. There the bank president had a three-year employment contract at an annual salary of approximately $100,000. The contract provided that if he were discharged before the end of the three years, the bank would, as severance benefits, continue to pay an amount equal to his salary for the balance of the three-year term. The bank fired the president after only 10 weeks. It honored the severance pay agreement for two years, then refused to pay the final nine and a half months' benefits. The court ruled the agreement was enforceable, relying in part on the Comptroller's interpretive ruling. (12 C.F.R. § 7.5220 (1995).)[3]

## V.

■ Turning to our own case, it is our determination that the amount of severance pay fixed in the parties' written bargain was not unreasonably great in relation to the contemplated sudden disruption of the bank president's income security should he be discharged without cause. The severance pay agreement did not violate either the letter or the spirit of section 24. When a bank and its officer negotiate the officer's compensation agreement, both are presumed to be aware that by federal law, the officer may become unemployed on a moment's notice, without warning or cause. In addition, the bank may wish to bargain for the officer's agreement that after his employment ends he will not immediately seek work with a local competitor. The parties may therefore choose to agree on a formula providing for a reasonable amount of severance pay. Some officers may be willing to accept

---

[3]In *Mitchell* v. *Am. Sav. & Loan Ass'n.* (1979) 122 Ariz. 138 [593 P.2d 692] the court approved $11,250 in severance pay agreed upon at the time the officer was asked to resign, over the employer's objection that the agreement lacked consideration and violated a state public policy forbidding a corporate officer to accept a payment as an inducement to resign. Because the employer was not a national bank, section 24 was not implicated.

a lower salary level in light of an agreement for reasonable severance pay. Here, the agreement for six months' salary as severance pay neither prevented nor unreasonably interfered with the bank's statutory right to discharge plaintiff at the pleasure of its board of directors. To hold otherwise would be to outlaw severance pay for bank officers, a rule we would not adopt absent more explicit legislation or more authoritative precedent.

At oral argument, respondent bank characterized the severance pay agreement as a golden parachute. (This term was also used in the *Schmidt* and *Reynolds* cases, both of which upheld the agreement.) In this case, a half year's salary is insufficiently prodigal to warrant this pejorative label; it is an ordinary silk parachute. It is unnecessary in the present case to express a view on the validity of the more extravagant severance pay agreements upheld in *Ewert* and *Stockwell.*

## VI.

Plaintiff's second claim, against the bank and Roberts for tortious denial of contract, cannot survive the Supreme Court's decision abolishing that tort in *Freeman & Mills, Inc.* v. *Belcher Oil Co.* (1995) 11 Cal.4th 85 [44 Cal.Rptr.2d 420, 900 P.2d 669], decided after this appeal was briefed. As respondent Roberts was named only in this count, the dismissal in his favor must be affirmed.

The order of dismissal is affirmed as to respondent Daniel Roberts and reversed as to respondent Rancho Dominguez Bank. Appellant to recover his costs from the Bank.

Klein, P. J., and Croskey, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 17, 1996.